IN THE MATTER OF THE ESTATE OF
HELENE MARGOW, DECEASED.

Argued December 12, 1977—Decided August 7, 1978.

Mr. *Leon J. Sokol* argued the cause for caveator-appellant (*Messrs. Greenstone and Sokol,* attorneys; Mr. *Kenneth H. Mack* on the brief).

Mr. *Alfred J. Egenhofer* argued the cause for proponent-respondent (*Messrs. Egenhofer and Heiner,* attorneys; Mr. *Egenhofer* on the brief).

The opinion of the court was delivered by

CLIFFORD, J. The fundamental issue raised by this case is whether Muriel Kabot, the proponent and executrix named

in the will of Helene Margow, should be barred because of her unauthorized practice of law from serving as executrix of Helene Margow's estate. Testatrix's nephew, Donald Peiffer, the residuary legatee and primary beneficiary under the will, mounted a challenge by filing a caveat against Mrs. Kabot's serving as executrix. The will arguably gives the executrix vast powers over Peiffer's bequest. The trial court upheld the challenge but the Appellate Division reversed, holding that although proponent had engaged in the unauthorized practice of law in violation of *N. J. S. A.* 2A:170–78 and *N. J. S. A.* 2A:170–80 by actively assisting in the drafting of Mrs. Margow's will, she was nevertheless entitled to reap the benefits of this unlawful conduct by serving as executrix. *In re Estate of Margow,* 149 *N. J. Super.* 249, 253–54 (App. Div. 1977). In recognition of both our obligation to protect the public "against the often drastic and far-reaching consequences of * * * inexpert legal advice", *In re Baker,* 8 *N. J.* 321, 339 (1951), and the long-standing equitable maxim that one should not be allowed to enjoy the benefits of one's unlawful action, we have determined that proponent should not be permitted to serve as executrix of Mrs. Margow's estate. Accordingly, we reverse.

## I

The factual background reveals that Helene Margow first met Muriel Kabot in 1962 when the latter was employed as a legal secretary to one Emil Wulster, an attorney-at-law of this state. Mrs. Margow had initially sought Wulster's advice in connection with the administration of her late husband's estate. At first the relationship between Mrs. Margow and Mrs. Kabot was a purely business one, growing out of Kabot's assistance to Wulster in the administration of the estate. After Mrs. Margow's will was probated, Kabot accompanied Wulster on several business trips to Mrs. Margow's apartment. As Wulster's secretary, Kabot had

typed a will for Margow in 1967 and had witnessed its execution. She did the same with respect to a 1968 codicil to the will. This was the extent of proponent's dealings with Margow between 1962 and 1973.

In 1973 proponent terminated her employment with attorney Wulster. Shortly thereafter Wulster was scheduled to call upon Mrs. Margow at her apartment on a business matter and he requested that proponent, then his former employee, accompany him. She refused. Margow then communicated directly with proponent, who explained that she was no longer employed by Wulster. At that point Margow, 78 years of age and in declining health, told Kabot that she was lonely and asked her to visit. The affirmative response signaled the beginning of their friendship.

Between 1973 and 1974, as Margow's health deteriorated rapidly, the friendship blossomed. During the course of one of the many visits proponent made to Margow's apartment, the latter expressed her dissatisfaction with her current will. Specifically, she was distraught over the fact that the lawyer (not Wulster) who had prepared her previous will of December 1974 had apparently named himself as executor without consulting her. As the two discussed the prospects of Margow preparing a new will, Kabot informed Margow, whose general distrust of lawyers was well-known to (and perhaps even fueled by) proponent, that there was no legal obstacle to her preparing a new will without the assistance of an attorney. Proponent, with 27 years of experience as a legal secretary, much of which with a firm engaged in an estate practice, was apparently perceived by Margow to be as competent as the attorneys with whom she had dealt in the past. Whether this perception was attributable to Margow's declining mental capabilities or a calculated attempt by proponent to play upon the fears of this lonely, vulnerable woman is unclear from the record.

Eventually Mrs. Margow asked Mrs. Kabot whether she would prepare a new will for her. Proponent initially informed Margow that she should consult an attorney on this

matter; however, this momentary acknowledgement of what she apparently knew to be the proper response quickly faded. She agreed to prepare the will.

In January 1975, proponent assisted Margow in the drafting of a new will. The procedure employed was that Margow, using proponent's will as a basic form, dictated the provisions of the will to Kabot, who transcribed the words — making "automatic changes" where she deemed appropriate — in shorthand form. Proponent subsequently typed the will from her shorthand notes, which she did not retain. Under this will, executed January 16, 1975, proponent was named sole executor and Donald Peiffer, principal beneficiary of a trust established under the previous will, now received the bulk of the estate outright. Although proponent claims that she offered to perform her services without compensation, she asserts also that Margow insisted she be compensated, and her nomination as executrix was more likely than not intended to serve as compensation for her services.

Following the execution of the will Margow developed a concern that proponent had been given too much discretion under the will to vote as she pleased the stock of Marmac Oil and Supply Co., a family concern, the sizeable assets of which constituted the bulk of the estate. Margow's position was that Donald Peiffer, her nephew, should control the Marmac stock, inasmuch as he had guided Marmac Oil since her husband's death. She therefore requested proponent to change the January will to meet this concern. Proponent drafted the necessary language, which was subsequently approved by Margow, whereupon a new will was executed on June 3, 1975, adding the following language to the January will:

SEVENTH: I hereby authorize my Executrix herein named to sell, exchange, mortgage and lease any and all of my estate, real and person [sic], in her discretion, at such time and in such manner and on such terms and conditions as she may deem best; to make, execute and deliver any and all papers necessary and proper for the sale, exchange, transfer, conveyance, mortgage and lease thereof,

and to do any and all acts in her discretion expedient or necessary to the full execution of this, my Last Will and Testament.

*EIGHTH*: I hereby direct that should any vote or other action be required in connection with any stock which I may own at the time of my death, that [sic] then and in that event my Executrix herein named shall vote such stock or take such other action with respect thereto as directed by my nephew, DONALD PEIFFER, aforesaid, such action to be only in favor of my said nephew, and not otherwise.

Immediately following the death of testatrix, proponent undertook to assert herself, rather aggressively, in the internal operation of Marmac Oil. Donald Peiffer, fearful that business disaster would result from proponent's apparent expansive notions of how she should exercise her authority under the will, filed a caveat against the probate of the will. He asserted that proponent should be barred from the office of executrix since she had obtained her nomination through the use of undue influence over testatrix and, as an independent ground, had engaged in the unauthorized practice of law by drafting the will of testatrix.

The trial court, in an unreported opinion, held that although there was insufficient proof of any undue influence in Kabot's assisting testatrix in drafting both her January 16, 1975 and June 3, 1975 wills, proponent had engaged in the unauthorized practice of law in violation of *N. J. S. A.* 2A:170–78 and *N. J. S. A.* 2A:170–80. The court held further that Kabot was disqualified from serving as executrix, basing its decision upon the public policy against allowing a person to benefit from his unlawful conduct. The court therefore granted the caveat to the extent that Mrs. Kabot was denied letters testamentary to serve as executrix, appointed Donald Peiffer as administrator with will annexed, and admitted the June 3, 1975 will to probate.

The Appellate Division agreed with the trial court that although there was insufficient proof of undue influence, proponent had engaged in the unauthorized practice of law in violation of *N. J. S. A.* 2A:170–78 and *N. J. S. A.* 2A:170–80. 149 *N. J. Super.* at 253–54. However, the court re-

versed that portion of the trial court's judgment which denied letters testamentary to Kabot since it felt that absent fraud, misconduct or a breach of trust by the executrix, which had not been proven, it was without power to defeat the will of testatrix by barring her choice of executrix. *Id.* at 254. We granted certification, 75 *N. J.* 16 (1977), to review the determination of the Appellate Division.

## II

██ Before addressing the substantive issues presented by this matter, we must recognize a question as to whether caveator, Donald Peiffer, has the requisite standing to maintain the caveat challenging the naming of proponent as executrix. As a general proposition a caveator must demonstrate that he would be aggrieved by the judgment of probate. *Eg., In re Hand's Will,* 95 *N. J. Super.* 182, 187 (App. Div.), certif. den., 50 *N. J.* 286 (1967). In the present case caveator would not receive less under the June 3, 1975 will if proponent were serving as executrix than he would have received under the previous wills. Thus, the sole basis for any claim of aggrievement is the potential financial loss of caveator, *qua* beneficiary under the will, if proponent's meddling in the affairs of Marmac Oil proved financially injurious to the company. Although such a claim is indeed speculative, we need not decide whether this claim gives caveator standing to maintain the caveat since proponent's unauthorized practice of law raises such far-reaching issues affecting the public interest as to call for resolution by this Court under our constitutional authority to regulate the practice of law. *N. J. Const.* (1947), Art. 6, § 2, ¶ 3.

## III

The threshold substantive issue is whether by assisting testatrix in the preparation of her will Mrs. Kabot engaged in the unauthorized practice of law. The applicable statutes provide:

Any person not licensed as an attorney or counselor at law, and any corporation that:

a. Engages in this state in the practice of law; or

b. Holds himself or itself out to the public, either alone or together with, by or through any other person, whether such other person is so licensed or not, as engaging in or entitled to engage in the practice of law, or as rendering legal service or advice, or as furnishing attorneys or counsel in legal actions or proceedings of any nature; or

c. Assumes, uses or advertises the title of lawyer or attorney at law, or equivalent terms, in the English or any other language —

Is a disorderly person.

[*N. J. S. A.* 2A :170–78.]

The term "practice of law" as used in this article includes (without limitation thereto) the engaging in the practice of preparation of wills or conveyances.

[*N. J. S. A.* 2A :170–80.]

Proponent claims she did not engage in the unauthorized practice of law within the meaning of the foregoing statutory language since with respect to the drafting of the Margow will her role was limited to that of scrivener and, as such, she was merely acting in a secretarial capacity. However, the facts clearly reveal that she functioned not only in a secretarial capacity but in a legal capacity as well. Specifically, proponent became involved in two activities which are traditionally restricted to licensed attorneys: legal counseling and the drafting of a will.

As to legal counseling, proponent admitted that as her friendship with Mrs. Margow grew in late 1974 she answered several of Margow's inquiries concerning the legal nuances of amending and drafting a will. For instance, the testatrix was informed by proponent that there was no legal obstacle preventing her from drafting or revising her own will as often as she wished, leaving the bulk of her estate to whomever she chose. This legal advice, perhaps self-serving in light of subsequent events, served to allay the fears of testatrix concerning her ability to alter her previous will without the aid of an attorney. Under the generally accepted view, however, proponent's legal counseling of testatrix as to her es-

tate planning constituted unauthorized practice of law. See, e. g., *State ex rel. Indiana State Bar Association v. Osborne,* 241 *Ind.* 375, 172 *N. E.* 2d 434, 435 (1961); Annot., *Drafting of Will or Other Estate-Planning Activities as Illegal Practice of Law* 22 *A. L. R.* 3d 1112 § 5 (1968).

That proponent actively engaged in the drafting of the June 3, 1975 will is readily apparent. As aptly noted by the trial court, the provisions of this will are so couched in "legalese" that it is inconceivable that testatrix, an elderly woman with no prior experience in the law, whose health was failing rapidly, could have drafted such a document. Indeed, proponent conceded that after she supplied testatrix with a copy of her will (to be used as a form for the will dictated by testatrix) she "clarified" some of the legal phrases as testatrix dictated, made "automatic changes", and even drafted some of the provisions entirely. There can be no doubt that such action constituted the unauthorized practice of law, since, as this Court stated in *Cape May County Bar Association v. Ludlam,* 45 *N. J.* 121, 126 (1965):

The exercise of judgment in the proper drafting of legal instruments, or even the selecting of the proper form of instrument, necessarily affects important legal rights. The reasonable protection of those rights, as well as the property of those served, requires that the persons providing such services be licensed members of the legal profession.

As may be seen, then, during 1974 and 1975 proponent was acting as the functional equivalent of Margow's legal counsel. Clearly, these actions constituted unauthorized practice of law in violation of *N. J. S. A.* 2A:170–78 and *N. J. S. A.* 2A:170–80. The fact that no demonstrable harm resulted from her unlawful actions does not lessen our concern as to the potential harm which may befall the unsuspecting victim of unqualified legal advice. In the words of Chief Justice Vanderbilt, "[t]he amateur at law is as dangerous to the community as an amateur surgeon would be." *In re Baker, supra,* 8 *N. J.* at 338.

## IV

▮ Whether proponent may serve as executrix of the Margow estate presents a more troublesome issue. Simply stated, this determination involves a weighing of the traditional deference given to testator's choice of executor against the public policy prohibiting one from benefitting from one's own unlawful conduct. We view the latter policy consideration to be of overriding importance in the present case and hence deny to proponent the status of executrix.

▮ Traditionally, courts have been understandably reluctant to bar an executor from office simply because, with the benefit of hindsight, the choice may be deemed to have been unwise or improvident. Even if the testator is aware of the particular flaws in his chosen executor but nevertheless decides to name him, a court would be most hesitant to defeat the will of the testator by imposing a bar. See Clapp, *Wills and Administration* 6 N. J. Practice § 690 at 253–55 (3d ed. 1962). This rule, while essentially a principle of construction and thus not absolute in application, is based upon the premise that an executor

is the creature and representative of the testator * * *; that a testator has a right to repose confidence in whom he will, and that if he selects as his representative an irresponsible, insolvent person, *in the absence of fraud or misconduct, or breach of trust*, to require such executor to give security, and thereby to remove him from office, and defeat the will of testator, is an exercise of power not vested in the court, and a violation of the rights of the executor. [*Holcomb v. Coryell*, 12 N. J. Eq. 289, 296 (Ct. Err. & App. 1857) (emphasis added).]

Under *Holcomb*, then, an executor may be barred from office upon a showing that the position was acquired as the result of fraud, misconduct or a breach of trust. *Id.* While the foregoing quoted language of the *Holcomb* Court was expressly relied upon by the Appellate Division as principal support for its conclusion that proponent should be allowed to serve as executrix, 149 *N. J. Super.* at 254, we consider

*Holcomb* support for the contrary view. Specifically, proponent's unauthorized practice of law may be fairly considered the type of "misconduct" expressly referred to by the *Holcomb* court as one of the three grounds for barring an executor from office.

■ Even if the general rule of deference to testator's choice of executor were applicable, which is not the case, persuasive policy considerations counsel against allowing proponent to serve as executrix. It is a fundamental proposition of our law that a court "will not assist a person to reap the fruits or benefits of an unlawful act." *Appell v. Reiner*, 81 *N. J. Super.* 229, 241 (Ch. 1963), rev'd on other grounds, 43 *N. J.* 313 (1964). As applied to the present case it is clear that to allow proponent to serve as executrix would allow her to benefit from her unauthorized practice of law, thereby tacitly encouraging such conduct. That such a result is obviously undesirable was aptly noted by Judge Breslin at trial in the present case:

> Where the actions of an individual in drawing a will constitute unauthorized practice of law, it would be in contradiction of public policy to allow her to thereby benefit, albeit indirectly * ᵇᵉ * It would be absurd to find that proponent had engaged in the unauthorized practice of law and yet allow her to be executrix for the estate. If that were done, the court would be putting its stamp of approval on her activities which are clearly against the interests of the public.

We endorse these views in support of the sound public policy against allowing proponent to benefit by her unlawful conduct.

Proponent contends, however, that barring her from the office of executrix is an inappropriate sanction to impose, since even if her conduct constituted unauthorized practice of law, there is no connection between that conduct and her nomination as executrix. The contention is fanciful. The facts demonstrate that testatrix felt a desire, quite expected under the circumstances, to compensate proponent for her legal counseling and aid in the preparation of her will. In

lieu of paying proponent for her services, testatrix decided to compensate her, albeit indirectly, by naming her executrix. While in theory the compensation she would receive as executrix of Mrs. Margow's estate is the equivalent of the value of the services rendered,

[i]n fact, one who is administrator or executor has a considerable amount of power as well as responsibility; and, in most cases, the fees which are allowed by statute are generally felt to be very good pay for the work and responsibility. The appointment is, in fact, lucrative. If the fact is to be taken as the test, the administrator or executor benefits financially by his appointment * * *.
[3 Bowe-Parker, *Page on Wills* § 26.55 at 125–26 (1961).]

Thus, since there is a connection between proponent's engaging in unauthorized practice of law and her nomination as executrix — a position from which she would benefit financially — barring her from this lucrative post[1] seems to be the only tenable sanction. Cf. *Vogel v. Lotz,* 26 *N. J. Misc.* 281, 283, 60 *A.* 2d 815 (Camden City Dist. Ct. 1948) (compensation for unauthorized practice of law is against public policy.)

V

In sum, we hold that proponent engaged in the unauthorized practice of law in violation of *N. J. S. A.* 2A:170–78 and *N. J. S. A.* 2A:170–80 by offering legal counsel to testatrix as to her estate needs and by actively participating in the drafting of her will. Under the circumstances of this case and especially in view of the climate in which she acquired nomination as executrix, proponent must be denied the benefits of that position.

---

[1]At oral argument counsel for proponent estimated that the estate was valued at between $500,000.00 and $700,000.00. Since the fees of an executor are based upon the value of the estate, see *N. J. S. A.* 3A:10–2 (Supp. 1978), proponent would stand to receive a sizeable amount of money.

The judgment of the Appellate Division is reversed and the judgment of the trial court barring proponent from serving as executrix is reinstated.

*For reversal and reinstatement*—Chief Justice HUGHES, and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—6.

*For affirmance* — None.