NORTH CHARLES GENERAL HOSPITAL, INC. ET AL.
*v.* EMPLOYMENT SECURITY ADMINISTRATION

[No. 108, September Term, 1978.]

*Decided September 21, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*F. Thomas Rafferty* and *James P. Gillece, Jr.,* with whom were *Richard J. Hafets* on the brief for Children's Hospital, Inc., and *Emanuel H. Horn* on the brief for North Charles General Hospital, Inc., for appellants.

*Carolyn I. Polowy, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Joel J. Rabin* and *Lois F. Lapidus, Assistant Attorneys General,* on the brief, for appellee.

DAVIDSON, J., delivered the opinion of the Court.

Maryland's Unemployment Insurance Law, Maryland Code (1957, 1979 Repl. Vol.), Art. 95A, § 20 (g) (7) (iii) (C), effective 1 July 1971, established that as of 1 January 1972, nonprofit organizations (nonprofit employers) would be subject to its provisions.[1] Article 95A, § 8 (d) (2) established that nonprofit employers could elect to pay contributions to the unemployment insurance fund (fund), or to reimburse the fund for benefits paid. More specifically, that section provides in pertinent part:

> "Election by Nonprofit Organization and Governmental Entities. Any nonprofit organization which, pursuant to § 20 (g) (7) of this article is or becomes subject to this article on or after January

---

1. Art. 95A, § 20 (g) (7) (iii) (C) provides:

" 'Employment' includes:

. . . .

"Service performed by an individual in the employ of a religious, charitable, educational or other organization if the service is excluded from the term 'employment' as defined in the Federal Unemployment Tax Act solely by reason of § 3306 (c) (8) of that act. . . ."

1, 1972, shall pay contributions under the provisions of subsections (a), (b) and (c) hereof, unless it elects in accordance with this paragraph, to pay to the Executive Director for the unemployment insurance fund an amount equal to the amount of regular benefits and one half of the extended benefits paid, that is *attributable to service in the employ of such nonprofit organization,* to individuals for weeks of unemployment which begin during the effective period of that election." (Emphasis added.)

Article 95A, § 8 (d) (2) (i)-(iv) set forth the procedures by which employers could assert or terminate their election to become reimbursers liable for payment in lieu of contributions.

The question here is whether under Art. 95A, § 8 (d) (2) an employer who has elected to become a reimburser must reimburse the fund for all benefits paid [2] after the effective date of its election, even though a portion or all of the employment period upon which the benefits were based (base period) [3] occurred while it was a contributor to the fund.

The appellants, The Children's Hospital, Inc. and North Charles General Hospital, Inc. (nonprofit employers), are nonprofit organizations who became contributors to the fund effective 1 January 1972. They elected to become reimbursers effective 1 January 1975 and 1 January 1976 respectively. Thereafter, former employees claimed and were granted unemployment benefits. The base period upon which such benefits were calculated occurred in whole or in part before the effective date of their elections. The Executive Director of the appellee, Employment Security Administration (ESA), determined that these nonprofit employers were required to reimburse the fund for all benefits paid after the effective

---

2. Throughout this opinion, the phrase reimbursement "for all benefits paid" means reimbursement for an amount equal to the amount of regular benefits and one half of the extended benefits paid.

3. Art. 95A, § 20 (a) provides:

" *'Base period'* means the first four of the last five completed calendar quarters immediately preceding the commencement of the benefit year as defined in subsection (q) of this section."

date of their elections. ESA's Board of Appeals affirmed as did the Superior Court of Baltimore City. We issued a writ of certiorari to. the Court of Special Appeals before consideration by that Court. We too shall affirm.

The nonprofit employers contend that the words "attributable to service in the employ of such nonprofit organization" were intended by the Legislature to establish that a reimburser must reimburse the fund only for benefits properly attributable to it. They maintain that because they had made a contribution to the fund based on wages paid while they were contributors, the only benefits properly attributable to them as reimbursers are those based on wages paid after they became reimbursers, and that consequently they are entitled to a credit for contributions previously paid to the fund. They conclude that such an interpretation effectuates the purpose of the election provided by Art. 95A, § 8 (d) (2) which is to minimize the economic burden of participation in the fund.

ESA contends that these words do nothing more than identify who shall be responsible for the benefits paid. It maintains that the benefits properly attributable to a reimburser are those based on the wages it paid during the base period, regardless of whether it was a contributor or reimburser at that time. We agree with this contention.

The cardinal rule of statutory construction is to ascertain and effectuate the actual intent of the Legislature. In determining this legislative intent, a court must read the language of the statute in context and in relation to all of its provisions. In addition, it may consider the statute's legislative history and must consider its purpose. *Rentals Unlimited, Inc. v. Administrator, Motor Vehicle Administration,* 286 Md. 104, 108, 405 A.2d 744, 748 (1979).

There is nothing in the phrase "attributable to service in the employ of such nonprofit organization" when read in context and in relation to the other provisions of the statute which indicates that those words mean that a reimburser is liable for anything less than the full amount of all benefits paid after the effective date of its election. Indeed, the

legislative history of Art. 95A, § 8 (d) (2) establishes that the Legislature intended that reimbursers be liable for the full amount of all such benefits.

The Federal Unemployment Tax Act, 26 U.S.C.A. §§ 3301 — 3311, was amended in 1970 by the Employment Security Amendments of 1970. Among other things, these amendments subjected nonprofit employers to the provisions of that act.[4] States were required to provide nonprofit employers with the option of being either contributors or reimbursers.[5] States were permitted to enact a transitional provision with respect to nonprofit employers who had been subject to state law on a contributory basis before 1 January 1969. Under a transitional provision, states could allow such nonprofit employers who elected to become reimbursers before 1 April 1972 to receive a credit for certain

---

4. 26 U.S.C.A. § 3304 (a) (6) (A) provides in pertinent part:

"[C]ompensation is payable on the basis of service to which section 3309 (a) (1) applies, in the same amount, on the same terms, and subject to the same conditions as compensation payable on the basis of other service subject to such law...."

26 U.S.C.A. § 3309 (a) (1) provides in pertinent part:

"(a) State law requirements. — For purposes of section 3304 (a) (6) —

(1) except as otherwise provided in subsections (b) and (c), the services to which this paragraph applies are —
(A) service excluded from the term 'employment' solely by reason of paragraph (8) of section 3306 (c) ...."

26 U.S.C.A. § 3306 (c) (8) provides:

"[T]he term 'employment' means any service performed ... except —
[S]ervice performed in the employ of a religious, charitable, educational, or other organization described in section 501 (c) (3) which is exempt from income tax under section 501 (a)."

5. 26 U.S.C.A. § 3309 (a) (2) provides:

"[T]he State law shall provide that a governmental entity or any other organization (or group of governmental entities or other organizations) which, but for the requirements of this paragraph, would be liable for contributions with respect to service to which paragraph (1) applies may elect, for such minimum period and at such time as may be provided by State law, to pay (in lieu of such contributions) into the State unemployment fund amounts equal to the amounts of compensation attributable under the State law to such service. The State law may provide safeguards to ensure that governmental entities or other organizations so electing will make the payments required under such elections."

contributions previously paid to the state fund.[6] This credit would become available only if nonprofit employers had been subject to state law before 1 January 1969, if a state had enacted such a transitional provision, and if previously contributing nonprofit employers elected to become reimbursers at the first opportunity.[7] The Employment·

---

6. 26 U.S.C.A. § 3303 (f) provides:

"Transition. — To facilitate the orderly transition to coverage of service to which section 3309 (a) (1) (A) applies, a State law may provide that an organization (or group of organizations) which elects before April 1, 1972, to make payments (in lieu of contributions) into the State unemployment fund as provided in section 3309 (a) (2), and which had paid contributions into such fund under the State law with respect to such service performed in its employ before January 1, 1969, is not required to make any such payment (in lieu of contributions) on account of compensation paid after its election as heretofore described which is attributable under the State law to service performed in its employ, until the total of such compensation equals the amount —

(1) by which the contributions paid by such organization (or group) with respect to a period before the election provided by section 3309 (a) (2), exceed

(2) the unemployment compensation for the same period which was charged to the experience-rating account of such organization (or group) or paid under the State law on the basis of wages paid by it or service performed in its employ, whichever is appropriate."

7. S. Rep. No. 91-752, 91st Cong., 2d Sess. 4 *reprinted in* [1970] U.S. Code Cong. and Ad. News, 3609, relative to the 1970 amendments, states:

"State programs would be required to permit nonprofit organizations the option of reimbursing the State for unemployment compensation payments attributable to service for them rather than paying regular State unemployment compensation taxes. They would not pay the Federal unemployment tax. States would be allowed to put the reimbursement option into effect at any time after December 31, 1969. *For nonprofit organizations covered by State laws on a contributory basis prior to January 1, 1969, States would be permitted to provide a transitional provision under which an organization which elects at its first opportunity to change from a contributions basis to a reimbursement basis would receive credit for the amount by which past contributions exceeded benefit payments attributable to service for them.*" (Emphasis added.)

S. Rep. No. 94-1265, 94th Cong., 2d Sess. 10 *reprinted in* [1976] U.S. Code Cong. and Ad. News, 6006, relative to the 1976 amendments to the Federal Unemployment Tax Act, describes the transition provisions of the 1970 amendments to the Federal Unemployment Tax Act, 26 U.S.C.A. §§ 3301 — 3311, as follows:

"The 1970 amendments also permitted any nonprofit entity which had been covered prior to those amendments to switch to this reimbursement method of paying for its coverage and to take credit for any past State unemployment taxes it had paid in excess of what

Security Amendments of 1970 did not authorize states to provide for credits under any other circumstances. Thus, while Congress's general purpose in providing nonprofit employers with an option to be contributors or reimbursers was to minimize the economic burden of their participation in the fund, it chose to permit credits to reimbursers only under very limited circumstances.

Article 95A, § 8 (d) (2) was one of the amendments enacted in order to conform Maryland law to that portion of the requirements of the Employment Security Amendments of 1970 relating to nonprofit organizations. It provided nonprofit employers with the required option to be either contributors or reimbursers. Because nonprofit employers had not previously been subject to the Maryland Unemployment Compensation Law, no transition provision was or could have been enacted. Accordingly, no credit of any kind was or could have been permitted.

The language, the legislative history, and the purpose of Art. 95A, § 8 (d) (2) indicate that the Legislature did not intend the words "attributable to service in the employ of such nonprofit organization" to permit any credit for previous contributions. We therefore hold that a nonprofit employer who elects to become a reimburser must reimburse the fund for all benefits paid after the effective date of its election, even though a portion or all of the base period occurred while the nonprofit employer was a contributor.

Here, The Children's Hospital, Inc. and North Charles General Hospital, Inc., nonprofit employers who became contributors to the fund on 1 January 1972, elected to become reimbursers effective 1 January 1975 and 1 January 1976. They are required to reimburse the fund for all benefits paid after the effective date of their respective elections.

*Order affirmed.*
*Costs to be paid by appellants.*

---

it would have paid under the reimbursement method. *This opportunity was available, however, only if permitted by State law and only if the nonprofit employer made an election to change to the reimbursement method at the first opportunity."* (Emphasis added.)