## S.A.S. PERSONNEL CONSULTANTS, INC. *v.* PAT-PAN, INC.

[No. 114, September Term, 1978.]

*Decided November 9, 1979.*

**336**

The cause was argued before Murphy, C. J., and Smith, Digges, Eldridge, Orth, Cole and Davidson, JJ.

*James E. Savitz,* with whom were *Gimmel & Weiman* on the brief, for appellant.

*Thomas P. Brown, III,* for appellee.

Davidson, J., delivered the opinion of the Court.

This case presents two questions. The first is whether, under Maryland Code (1975), § 7-301 of the Corporations and Associations Article, an employment agency, which is a foreign corporation not registered or qualified in Maryland, and which procured an employee for a Maryland employer, is "doing business in this State" and is therefore precluded from maintaining a suit in Maryland for an alleged breach of contract. The second is whether Maryland Code (1957, 1972 Repl.Vol., 1978 Cum.Supp.), Art. 56, § 161 requires such an employment agency to be licensed in order to recover damages in Maryland for such an alleged breach of contract.

The facts appearing in the pleadings and affidavits, none of which were disputed in the trial court, show that the appellant, S.A.S. Personnel Consultants, Inc. (S.A.S.), is an employment agency incorporated in the District of Columbia, which at the time here relevant was not registered, qualified or licensed in Maryland. The appellee, Pat-Pan, Inc. (Pat-Pan), is the owner of a restaurant located in Anne Arundel County, Maryland. On 14 October 1977, Pat-Pan called S.A.S. at its District of Columbia office. During that telephone conversation, Pat-Pan indicated that it needed a chef. It agreed "to work with" S.A.S. as an employment agency, and S.A.S. informed it that it would be responsible for S.A.S.'s fees. On the same day, S.A.S. sent Pat-Pan a letter in which it described itself as the "largest hospitality personnel service

in the Washington metropolitan area." It enclosed a copy of its advertisement in *Washingtonian Magazine,* a periodical circulated in Maryland, and a copy of its "contract and fee schedule."

On or about 21 October 1977, S.A.S. referred Mr. Gilles L. Foucard to Pat-Pan. After an interview, Pat-Pan told S.A.S. that even though it was interested in Mr. Foucard, it would not then hire him because business was "seasonably slow." Pat-Pan indicated that it would reevaluate its position and contact S.A.S. in mid-January, 1978. Instead, in mid-January, Pat-Pan hired Mr. Foucard without contacting S.A.S. or paying a fee.

On 7 June 1978, in the Circuit Court for Anne Arundel County, S.A.S. filed a declaration and a motion for summary judgment seeking damages for an alleged breach of contract. Pat-Pan filed a "Motion Raising Preliminary Objections" under Maryland Rule 323, on the grounds, insofar as here relevant, that S.A.S. lacked capacity to sue because it was a foreign corporation "doing business" in Maryland without being registered under § 7-301 of the Corporations and Associations Article, or licensed under Art. 56, § 161. It requested that the suit be dismissed with prejudice. On 7 August 1978, the trial court entered an order which granted the motion and dismissed the case. We issued a writ of certiorari to the Court of Special Appeals before consideration by that Court. We shall reverse.

I

Maryland Code (1975), § 7-202(a) of the Corporations and Associations Article provides:

> "Unless it is qualified to do business under § 7-203 of this subtitle, before doing any interstate or foreign business in this State, a foreign corporation shall register with the Department."

338

Section 7-203(a) of the Corporations and Associations Article provides:

"Before doing any intrastate business in this State, a foreign corporation shall qualify with the Department."

Section 7-301 of the Corporations and Associations Article provides in pertinent part:

"If a foreign corporation is doing or has done any intrastate, interstate, or foreign business in this State without complying with the requirements of Subtitle 2 of this title, neither the corporation nor any person claiming under it may maintain a suit in any court of this State...."

The initial question before us is whether an unregistered or unqualified foreign corporation, which procured an employee for a Maryland employer, is "doing business in this State." [1]

---

1. Before 1964, the words "doing business," in Md. Code (1957), Art. 23, § 91(c), now Md. Code, § 7-301 of the Corporations and Associations Article, applicable to foreign corporations required to be registered in order to sue in the courts of Maryland, and the words "doing business," in Md. Code (1957), Art. 23, § 92(a), applicable to obtaining personal jurisdiction over foreign corporations, were equated by this Court which construed the phrase "doing business" in the same way for both purposes. G.E.M., Inc. v. Plough, Inc., 228 Md. 484, 486, 180 A.2d 478, 480 (1962). By the Acts of 1964, ch. 95, effective 1 June 1964, the Legislature enacted Md. Code (1957), Art. 75, § 96(a) (1), now Md. Code (1974), § 6-103 of the Courts and Judicial Proceedings Article. Insofar as here relevant, it used the words "transacting any business" as a basis for obtaining personal jurisdiction over foreign corporations. By the Acts of 1967, ch. 532, effective 1 June 1967, Md. Code (1957), Art. 23, § 92(a) was repealed.

Recent cases suggest that the term "doing business" in § 7-301 of the Corporations and Associations Article is not coterminous or synonymous with the term "transacting any business" in § 6-103 of the Courts and Judicial Proceedings Article. See Mohamed v. Michael, 279 Md. 653, 657-58, 370 A.2d 551, 553-54 (1977); Harris v. Arlen Properties, Inc., 256 Md. 185, 195-96, 260 A.2d 22, 27-28 (1969); Novack v. National Hot Rod Ass'n, 247 Md. 350, 353-54, 231 A.2d 22, 24-25 (1967); Van Wagenberg v. Van Wagenberg, 241 Md. 154, 164-66, 215 A.2d 812, 817-18 (1965); Gilliam v. Moog Indus., Inc., 239 Md. 107, 111, 210 A.2d 390, 392-93 (1965). See also United Merchants & Mfrs. Inc. v. David & Dash, Inc., 439 F.Supp. 1078, 1083 (D.Md. 1977); Premier Indus. Corp. v. Nechamkin, 403 F.Supp. 180, 183-84 (1975); Beaty v. M.S. Steel Co., 276 F.Supp. 259, 262 (D.Md. 1967). Because this issue was neither raised or decided in the trial court, nor raised in this Court, we shall not consider it here. Md. Rule 885. Accordingly, this Court's analysis rests on those cases which have construed the phrase "doing business" in the same way for both purposes. See Premier Indus. Corp. v. Nechamkin, 403 F.Supp. at 184 n.6.

"[A] foreign corporation is doing business within a state when it transacts some substantial part of its ordinary business therein." *Chesapeake Supply & Equip. Co. v. Manitowoc Eng'r Corp.,* 232 Md. 555, 562, 194 A.2d 624, 627 (1963). The party asserting that an unregistered or unqualified foreign corporation is "doing business within the state" carries the burden of proof. *Rudden v. Gro-Plant Indus., Inc.,* 269 Md. 173, 176, 304 A.2d 812, 814 (1973). *See Quinn v. Bowmar Publishing Co.,* 445 F.Supp. 780, 786 (D.Md. 1978); *United Merchants & Mfrs. Inc. v. David & Dash, Inc.,* 439 F.Supp. 1078, 1087 (D.Md. 1977).

A determination whether a particular act or set of acts constitutes "doing business" depends upon the facts of each individual case, and rests not on a single factor, but rather on the nature and extent of the business and activities which occur in the forum state. *White v. Caterpillar Tractor Co.,* 235 Md. 368, 372, 201 A.2d 856, 858 (1964); *State* ex rel. *Bickel v. Pennsylvania Steel Co.,* 123 Md. 212, 218, 91 A. 136, 138 (1914). Factors which may be taken into account include the payment of state taxes; the maintenance in the state of property, an office, telephone listings, employees, agents, inventory, research and development facilities, advertising, and bank accounts; the making of contracts; and the extent or pervasiveness of management functions including supervision and control of distributors and services for customers within the state. *Gilliam v. Moog Indus., Inc.,* 239 Md. 107, 109, 210 A.2d 390, 391 (1965); *White v. Caterpillar Tractor Co.,* 235 Md. at 373, 201 A.2d at 858; *Thomas v. Hudson Sales Corp.,* 204 Md. 450, 464-65, 105 A.2d 225, 231 (1954). Where there is solicitation, shipment of goods, and an extensive set of activities or management functions, foreign corporations have been held to be "doing business." *White v. Caterpillar Tractor Co.,* 235 Md. at 374, 201 A.2d at 859; *Thomas v. Hudson Sales Corp.,* 204 Md. at 465-66, 105 A.2d at 231. Foreign corporations which merely solicit orders or sales, or engage in activities in Maryland directly related to such solicitation or sales, including the interstate delivery of goods, have, however, been held not to be "doing business." *Gilliam v. Moog Indus., Inc.,* 239 Md. at 109, 210 A.2d at 391;

*G.E.M., Inc. v. Plough, Inc.,* 228 Md. 484, 488, 180 A.2d 478, 481 (1962); *Feldman v. Thew Shovel Co.,* 214 Md. 387, 396-97, 135 A.2d 428, 432 (1957). *See United Merchants & Mfrs. Inc. v. David & Dash, Inc.,* 439 F.Supp. at 1087-89; *Johns v. Bay State Abrasive Prods. Co.,* 89 F.Supp. 654, 660 (D.Md. 1950).

Here there are insufficient facts to show that S.A.S. was "doing business" in Maryland. Its office was in the District of Columbia where it was incorporated. Before 30 January 1978, it did not maintain an office in Maryland. None of its employees was physically present in Maryland, and none of them conducted employment agency operations in Maryland. There are no facts to show that S.A.S. paid Maryland taxes, maintained a telephone listing or bank accounts in Maryland, or that it exercised any managerial functions in Maryland. The fact that S.A.S. advertised in *Washingtonian Magazine* establishes nothing more than mere solicitation. S.A.S.'s statement that it was "the largest hospitality personnel service in the Washington metropolitan area" does not support a rational inference that any portion of its business was necessarily conducted in Maryland, and establishes, at best, mere solicitation. The only other fact tending to show that S.A.S. was "doing business" within the State of Maryland was its referral of Mr. Foucard to Pat-Pan which subsequently employed him at its Maryland restaurant. The referral of potential employees by S.A.S. is analogous to the shipment of goods by a foreign manufacturer. Thus, the advertisement, statement, and referral establish only that S.A.S. solicited business in and did the equivalent of shipping goods into the State of Maryland.

Under the present circumstances, we hold that S.A.S. was not "doing business" in Maryland. Accordingly, under § 7-301 of the Corporations and Associations Article, S.A.S., although unregistered and unqualified, is not precluded from maintaining a suit in Maryland. Courts in other jurisdictions which have considered this question under similar statutes have reached the same result. *Financial Corp. v. Executive Search, Inc.,* 16 Ariz.App. 115, 117, 491 P.2d 504, 506 (1971); *Electronics Devices, Inc. v. Mark Rogers Assocs.,* 60 Misc.2d 322, 325, 303 N.Y.S.2d 158, 162-63 (1969).

## II

Maryland Code (1957, 1972 Repl.Vol., 1978 Cum. Supp.), Art. 56, § 161, "Licenses — Fee Charging Employment Agencies" provides in pertinent part:

> "No person, firm or corporation shall *open, operate, or maintain an employment agency in this State,* nor shall any person on or after January 1, 1974, act in the capacity of an employment counselor without first obtaining a license for that purpose from the Commissioner of the Division of Labor and Industry." (Emphasis added.)

Article 56, § 162 defines an employment agency, in pertinent part, as follows:

> " 'Employment agency' means any individual, partnership, association, corporation, contractor or subcontractor who, for a fee, procures or offers or attempts to procure employees for persons seeking the service of employees, or employment for persons, seeking employment. . . ."

This Court assumes, if the Legislature does not indicate otherwise, that contracts made by unlicensed persons subject to regulatory statutes designed to protect the public are illegal as against public policy and will not be enforced. *Harry Berenter, Inc. v. Berman,* 258 Md. 290, 298-99, 265 A.2d 759, 764 (1970); *Goldsmith & Dell v. Manufacturers' Liability Ins. Co.,* 132 Md. 283, 286, 103 A. 627, 628 (1918). Thus, the remaining question before us is whether a foreign employment agency which has procured an employee for a Maryland employer is subject to the requirements of the regulatory act here involved.

The cardinal rule of statutory construction is to ascertain the intent of the Legislature. In determining this intent, a court must read the language of the statute in context and in relation to all of its provisions. *North Charles Gen. Hosp., Inc. v. Employment Security Admin.,* 286 Md. 115, 118, 405 A.2d 751, 753 (1979). Here the words "open, operate or maintain an employment agency *in this State,*" appearing in

Art. 56, § 161, when coupled with the definition of the term "employment agency," appearing in Art. 56, § 162, indicate that only employment agencies which engage in specified activities within the State of Maryland are subject to its requirements. (Emphasis added.) [2]

The facts here establish that although unlicensed, S.A.S. did not engage in any of the specified activities within the State of Maryland. It is not therefore subject to the licensing requirement of Art. 56, § 161. Accordingly, it is not precluded from recovering damages for an alleged breach of contract. Courts in other jurisdictions which have considered this question under similar statutes have reached the same result. *Financial Corp. v. Executive Search, Inc.,* 16 Ariz.App. at 117, 491 P.2d at 506; *Saks Theatrical Agency v. Mentine,* 24 N.J.Misc. 332, 334, 48 A.2d 644, 645 (1946); *Schroeder v. Ajax Corp.,* 71 Wis.2d 828, 830-31, 239 N.W.2d 342, 343 (1976).

The trial court erred in granting the "Motion Raising Preliminary Objections." We shall reverse and remand.

> *Order reversed.*
> *Case remanded to the Circuit Court for Anne Arundel County for further proceedings in accordance with this opinion.*
> *Costs to be paid by appellee.*

---

2. This construction is supported by an administrative interpretation. *See* COMAR 09.12.11.03, effective 4 April 1973.