**EGAN MARINE CONTRACTING CO., INC., Plaintiff,**

v.

**SOUTH SEA SHIPPING CORP., et al., Defendants.**

Civ. No. R–82–1811.

United States District Court, D. Maryland.

Aug. 26, 1983.

David W. Skeen, Steve White, Constable, Alexander, Daneker & Skeen, Baltimore, Md., for plaintiff.

Donald E. Sharpe, Jonathan D. Smith, Piper & Marbury, Baltimore, Md., for defendant South Sea Shipping Corp.

William F. Ryan, Jr., Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, Md., for defendant Hansen & Tidemann, Inc.

## OPINION

RAMSEY, District Judge.

Currently before the Court is defendant South Sea Shipping's motion to dismiss the

amended complaint under Fed.R.Civ.P. 12(b)(2) and 5. Defendant contends that service was improper and even if it was not, that the Court lacks personal jurisdiction over South Sea. Plaintiff has filed opposition and, having heard argument of counsel, the Court now rules.

## I. *Service of Process*

Service of process on defendant was accomplished by delivering the summons and complaint to the Maryland Department of Assessments & Taxation pursuant to Rule 106(e) of the Maryland Rules of Procedure. The Rule provides:

> If a corporation required [by statute of this State] to have a resident agent (i) has not a resident agent ... process may be served upon the State Department of Assessments and Taxation.

Thus, for service to have been proper in this case, the corporate defendant must have been required to have a resident agent in Maryland.

Whether or not a foreign corporation must have a resident agent is governed by Title 7 of the Maryland Corporations and Associations Article. Sections 7–202 and 7–203 require foreign corporations which do intrastate, interstate, or foreign business in Maryland to register or qualify with the Department of Assessments and Taxation. Section 7–205 requires a foreign corporation to have a resident agent in Maryland if it has requested or is qualified to do business here.

The question of whether or not a corporation is doing business in Maryland is one that turns on the facts of each individual case. *Chesapeake v. Mantiwoc,* 232 Md. 555, 194 A.2d 624 (1963). The party seeking to demonstrate that the corporation is doing business in the state has the burden of proof. *S.A.S. Personnel Consultants, Inc. v. Pat-Pan, Inc.,* 286 Md. 335, 407 A.2d 1139 (1979).

In addition to the current case, there are two other actions pending against South Sea in this Court: *Coutave Shipping Co., S.A. v. South Sea Shipping Corp., et al.,* Civil Action No. M–82–731, and *John T.* *Clark & Son of Maryland, Inc. v. South Sea Shipping Corp., et al.,* Civil Action No. HM–82–1521. In *Coutave,* a shipowner seeks attachment of South Sea's assets that allegedly are in the possession of South Sea's Baltimore agent, Hansen & Tidemann, Inc., to cover payments arising out of a charter agreement between Coutave and South Sea. In the latter suit, *John T. Clark & Son* seeks payment for over $160,000 in stevedoring services which purportedly were provided by Clark to South Sea's chartered ships visiting Baltimore.

Plaintiff in the current case has submitted as Exhibit 1 in support of its opposition the affidavit of Maurice Byan filed in the *John T. Clark* case. Mr. Byan, the vice-president of operations with Clark, states that Hansen and Tidemann, Inc. was appointed the Baltimore agent for South Sea Shipping Corp., and that Clark performed over $172,000 work of stevedoring and other services for five ships chartered by South Sea.

Plaintiff's involvement with defendant South Sea consisted in part of performing lashing services in October, 1981, upon the M/V LICHIANG, a Ship chartered by South sea. According to plaintiff, it was requested to do so by Clark and it was not until plaintiff received payment by check drawn on South Sea's account that it became aware that South Sea was the principal for whom services were performed. Plaintiff also performed lashing services for three other vessels chartered by South Sea, the work ordered by Hansen & Tidemann. Plaintiff states that it was only after it began an investigation following Hansen & Tidemann's failure to pay for the services that it learned that South Sea was the principal. *See* Affidavit of Patrick Egan.

Apparently, other companies also have provided services for ships chartered by South Sea. According to the plaintiff, the bottom line is that between October 15, 1981, and March 27, 1982, South Sea operated at least six ships in the Port of Balti-

more for which over $220,000 of services were ordered. These vessels, plaintiff alleges, discharged valuable cargo within this jurisdiction, from which South Sea profited.

The defendant relies on the affidavit filed by its operations officer, Michael Bennett. He contends that South Sea had no direct dealings with plaintiff with respect to any of the ships in question and is "shocked" at the filing of the current lawsuit. Mr. Bennett states, that South Sea does not do any of the following within the State of Maryland: maintain an office or warehouse, maintain an inventory, have any salesmen, have a telephone or local number in the State which rings in its New York Office, or engage in or transact any business.

The United States Court of Appeals for the Fourth Circuit interpreted the predecessor statute to Title 7 of the Maryland Corporations and Associations Article in *Gkiafis v. S.S. YIOSONAS*, 342 F.2d 546, 1965 AMC 1411 (4th Cir.1965) (Sobeloff, C.J.). In *Gkiafis*, the Court held that a shipowner had been "doing business" within the State of Maryland to an extent sufficient to require it to appoint a resident agent and to subject it to service of process through the State Department of Assessments and Taxation. The court based its conclusion on the fact that the Panamanian corporation's sole vessel, a tramp steamer, had appeared in Maryland six times within a nine-year period.

The Court engaged in extended analysis and rejected the district court's reading of the statute to mean *"regularly* doing business." *Id.* at 550. The Court found that the statute was intended to extend Maryland jurisdiction so far as constitutionally possible, requiring that the foreign corporation have only such minimum contacts with the forum such that traditional notions of fair play and substantial justice would not be offended. *Id.* at 552–53, *citing International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

Defendant cites *S.A.S. Personnel Consultants, Inc. v. Pat-Pan, Inc.*, 286 Md. 335, 407 A.2d 1139 (1979), and *United Merchants and Manufacturers, Inc. v. David & Dash, Inc.*, 439 F.Supp. 1078 (D.Md. 1977), as supportive of its position. These cases addressed the issue of whether a party was "doing business" within the state without appointing a resident agent so as to disqualify it from maintaining a lawsuit in Maryland Courts pursuant to Md. Corporations and Associations Code § 7–301. The Court will assume for the purpose of this decision that "doing business" in Section 7–301 has the same meaning as in Sections 7–202 and 7–203. In *S.A.S. Personnel*, the Court of Appeals of Maryland held that a foreign corporation which had no office or employees in Maryland and no telephone listing or bank account here was not "doing business" in the state despite advertising in the state. The case, however, revolved around a single job referral to an employer in Maryland by an out-of-state agency. In *David & Dash*, the court held that a foreign corporation was not doing business in Maryland even though it maintained an office and telephone here. The court placed emphasis on the fact that mere solicitation of interstate sales does not constitute "doing business."

The Court finds the facts in the current case to be more akin to the facts of the *Gkiafis* case than to those cited by defendant. According to the facts as presented by the plaintiff, defendant's six chartered ships visited Maryland within a five and a half month period. The defendant apparently intended to operate ships and transport cargo to and from Baltimore on a regular basis, has incurred over 200,-000 dollars in stevedoring costs, and has two other suits pending against it in this Court. Whether or not the defendant and the plaintiff had face-to-face dealings is irrelevant. The defendant's presence was substantial and they should be required to appoint a resident agent pursuant to Sections 7–202 and 7–203. Accordingly, service of process was properly made upon South Sea pursuant to Maryland Rule 106(e) by delivery of the Summons and

**4**

Complaint to the Maryland Department of Assessments and Taxation.

## II. *Personal Jurisdiction over South Sea*

The defendant also contends that the complaint should be dismissed because the Court lacks personal jurisdiction over South Sea. Md.Ct. & Jud.Pro.Code § 6–103(b)(1), the applicable section of Maryland's Long Arm Statute, states:

> A Court may exercise personal jurisdiction over a person who directly or by an agent: (1) transacts any business in the state.

■ The groundwork for the decision on the issue of personal jurisdiction has already been laid. Based on the facts already recited, the Court is satisfied that South Sea has transacted business in the port of Baltimore and the State of Maryland sufficient to comport with the requirements of due process. The Maryland long-arm statute has been extended to the constitutional limits of due process, *McLaughlin v. Copeland,* 435 F.Supp. 513 (D.Md. 1977), and the exercise of personal jurisdiction in this action would not be offensive to "traditional notions of fair play and substantial justice." The business engaged in by South Sea is the origin of this lawsuit, and there is no injustice in requiring South Sea to be accountable for the privilege of doing business here.

Accordingly, the Court finds personal jurisdiction over the defendant to be proper under the Maryland Long Arm Statute.