ROBERT T. WINZINGER, INC., a New Jersey Corporation, Plaintiff,

v.

MANAGEMENT RECRUITERS OF BUCKS COUNTY, INC., a Pennsylvania Corporation, and Theodore M. Mashack, individually and trading as Management Recruiters of Bucks County, Defendants.

Civ. No. 86–4170 (GEB).

United States District Court, D. New Jersey.

Aug. 17, 1987.

Farr, Wolf & Lyons, Kathleen M.Calemmo, Eastern Intern. Executive Office, Bellmawr, N.J., for plaintiff.

W. Cary Edwards, Atty. Gen. (Margery F. Nathanson, Deputy Atty. Gen., on brief Andrea M. Silkowitz, Deputy Atty. Gen., of counsel), Newark, N.J., for State of N.J., intervenor.

Kenney & Kearney, Mark Schwartz, Cherry Hill, N.J., for defendants.

## OPINION

BROWN, District Judge.

This declaratory judgment action was brought originally in state court and removed on the basis of diversity of citizenship. Plaintiff is a construction company located in Burlington County, New Jersey. Defendants are an employment agency and its president, and are located in Newtown, Pennsylvania.

Defendant agency solicited plaintiff's business, advertising its services and specific persons for hire. A series of conversations then took place between the parties. Plaintiff denies that defendants ever mentioned that they charged a fee for their services. Subsequently, on June 2, 1986, defendants sent one William Forbes to plaintiff to interview for the position of estimator. He was eventually hired; defendants then requested payment of $11,000 for their services and threatened to sue. Instead, plaintiff filed this action, and received temporary restraints, pending a show cause hearing, enjoining defendants from enforcing the alleged contract in any judicial proceeding. The action was removed, the show cause hearing never took place, and the restraints have been dissolved.

Plaintiff now moves for summary judgment, claiming that the alleged contract is void and unenforceable because defendants are not licensed as an employment agency in New Jersey.

§ 34:8–26 states in pertinent part:
No person shall either directly or indirectly open conduct or maintain an employment agency or perform any of the functions of an employment agency without first obtaining such license or licenses as is or are required by the provisions of this act.

The provision further provides for civil penalties to be levied by the Attorney General against unlicensed agencies. § 34:8–26.1 gives the Attorney General power to conduct an investigation.

Defendants argue that the statute applies only to employment agencies conducting business in New Jersey. They state that they do not have any employees, agents, representatives, officers, property, telephone listing, or advertising in New

Jersey, but admit that they actively solicited plaintiff's business by phone and mail on numerous occasions.

Defendants urge that the statute must be read in its entirety and point to other licensing provisions which refer to "the county" or "the municipality" where the agency is or will be located. They argue that the state's enforcement machinery would be overtaxed if the Attorney General had to conduct the various licensing procedures. There is no New Jersey case law construing the applicability of the statute to out-of-state agencies.

Alternatively, defendants argue that if the statute does apply to foreign employment agencies, it is unconstitutional under the Commerce Clause of the United States Constitution.

The State of New Jersey has intervened in defense of the constitutionality of the statute and its applicability to defendants, and in support of plaintiff's summary judgment motion. Our analysis is as follows: first, does the Employment Agency Act apply to foreign agencies like defendant; second, does the statute violate the Commerce Clause; and third, if the statute is constitutional does defendant's failure to adhere to it render the contract unenforceable?

I. There is nothing in the language of the statute which precludes its application to out-of-state agencies. The definition in § 34:8–24 applies to the defendant agency, given the evidence which we have:

> "Employment agency" means and includes the business of procuring or offering to procure help or employment, or the giving of information as to where help or employment may be procured, whether the business is conducted in a building or on the street or elsewhere; or the business of keeping an employment bureau, nurses' registry, or booking agency for procuring engagements for performing artists, or other agency or office for procuring work or employment for persons, where a fee or privilege is exacted, charged or received directly or indirectly for procuring or assisting or promising to procure employment, work, enagement or a situation of any kind, or for procuring or providing help or promising to provide help for any person, whether such fee is collected from the applicant for employment or the applicant for help, or whether the application for help or employment is made directly or indirectly by either the prospective employer or the prospective employee or by any person acting to secure either help or employment for the prospective employer or the prospective employee. "Employment agency" shall not include any temporary help service firm.

The licensing requirement of § 34:8–26 is not ambiguous. The statute's emphasis is on the activity, not the location of the agency. In addition, out-of-state employment agencies form no part of the list of entities excluded from the statute in § 34:8–25. Moreover, even if it could be said that the act is ambiguous, any such ambiguity would have to be interpreted to accomplish the legislative purpose. *Eagle Truck Transport, Inc. v. Board of Review*, 29 N.J. 280, 289–290, 148 A.2d 822 (1959). Clearly the statute is a consumer protection statute. It would be incongruous for the Legislature to have desired the statute to apply to New Jersey agencies, while allowing foreign agencies to avoid its requirements while providing the same services to New Jersey consumers.

The Attorney General, who is charged with enforcing the statute, has consistently interpreted it to have application to foreign employment agencies doing business in New Jersey since at least 1975, when he rendered an opinion so stating. This consistent interpretation of the statute by the agency charged with its enforcement, although not conclusive, is entitled to be given great weight by this Court. *Self v. Board of Review*, 91 N.J. 453, 457, 453 A.2d 170 (1982); *Peper v. Princeton University Board of Trustees*, 77 N.J. 55, 69–70, 389 A.2d 465 (1978).

The Attorney General also notes that several of the statute's provisions which the defendants argue would be unmanageable if applied to foreign agencies have already been made manageable (such as

not strictly enforcing the requirement of character references from New Jersey residents), or can easily be made manageable (such as having agency records sent to the Attorney General or kept with a registered agent in New Jersey). Moreover, at least two foreign employment agencies are in fact presently licensed in New Jersey.

■ Defendants' contention that they do not conduct business in New Jersey is clearly unsupported by the facts revealed through discovery. Defendants have solicited over 100 New Jersey firms in the past year and plan to continue to do so. They have placed people with at least three New Jersey businesses. They actively engage in telephone and mail solicitation in New Jersey. Their contacts with plaintiff during the transaction which forms the basis for this suit were substantial. This cannot be considered an isolated "single transaction". *Cf., Saks Theatrical Agency v. Mentine*, 24 N.J. Misc. 332, 48 A.2d 644 (Camden Cty. Ct. 1946).

Defendants' reliance on *S.A.S. Personnel Consultants v. Pat-Pan, Inc.*, 286 Md. 335, 407 A.2d 1139 (Ct.App.1979) is misplaced. That case relied primarily on a Maryland statute which clearly applied only to employment agencies "in this State". *Id.* 407 A.2d at 1143. The New Jersey statute does not contain such a qualification. In addition, the Court held that under Maryland law the agency was not "doing business" in that State, despite the fact that it actively solicited customers in Maryland. *Id.* at 1142. It found that, under Maryland law, more was required for "doing business", such as payment of state taxes, property held in the state, office, employees, bank accounts, etc. within the state. *Id.*

It should be noted, however, that New Jersey courts have enunciated standards for doing business in this State which are quite different from those in *S.A.S., supra. See*, e.g., *Davis & Dorand, Inc. v. Patient Care Medical Services, Inc.*, 208 N.J.Super. 450, 506 A.2d 70 (Law Div. 1985), which involved an action for services rendered brought in New Jersey by a New York advertising agency which had rendered "creative" services (placing ads in various New Jersey media) for a new Jersey corporation, but had failed to obtain a certificate of authority to do business in New Jersey and failed to timely file a notice of business activities report. The Court held that the plaintiff could not maintain the action. *Id.* at 453, 506 A.2d 70. The plaintiff had "repeatedly and regularly" placed ads for defendant in New Jersey newspapers, by mail or telephone, *id.* at 454, 506 A.2d 70, and on at least one occasion had its representatives come to defendant's office in New Jersey to solicit its services. *Id.* at 454–55, 506 A.2d 70. However, the plaintiff maintained no property, offices or employees in New Jersey. The Court held that the foregoing "solicitation of business within New Jersey with additional elements" demonstrated that plaintiff was transacting business in New Jersey and "not just engaged in interstate commerce." *Id.* at 455, 506 A.2d 70.

It is clear to this Court that the New Jersey statute in question does apply to foreign employment agencies who transact business in New Jersey, that the defendants did transact such business, and that the statute therefore applies to them.

■ II. By determining that defendant agency is transacting business within New Jersey and is not solely engaged in interstate commerce, we have effectively decided that the statute does not violate the Commerce Clause as applied to defendants. The Supreme Court has held that the test in this area is as follows:

> Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). Clearly the statute regulates evenhandedly. It does not require more of foreign agencies than it does of those physically located in New Jersey. Resident agencies are not favored in any way.

The putative local benefits are obvious, i.e., the protection of New Jersey job seekers and employers. This is not disputed by defendants, and we find it to be a legitimate and very important local public interest. In weighing those benefits against the burdens imposed by the statute on foreign agencies, it is again obvious that the various licensing requirements impose but a slight burden. As mentioned earlier, the requirements are either easily met or can be made so. Defendants have not shown that the legislation burdens interstate commerce in any significant way. *Hughes v. Oklahoma*, 441 U.S. 322, 99 S.Ct. 1727, 60 L.Ed.2d 250 (1979).[1] Therefore, the Employment Agency Act does not violate the Commerce Clause.

■ III. Having determined that the statute applies to defendants and is constitutional, we must now consider whether defendants' admitted non-compliance renders unenforceable the alleged contract with plaintiff. The key case in this area is *Costello v. Schmidlin*, 404 F.2d 87 (3d Cir.1968), which involved a claim for professional services by an engineer licensed in New York, but not licensed in New Jersey as required by statute. That statute, like the one herein, did not specifically bar enforcement of claims by non-licensed engineers, but expressly provided for the imposition of fines. Those facts, plus the facts that: 1) the engineer's contract was with a professional architect, a person "in the same business field"; 2) the architect did not rely on the existence of a New Jersey engineer's license; and 3) the engineer provided only consulting services, not direct engineering services, led the Court to hold that the contract was enforceable despite non-compliance with the licensing statute. 404 F.2d at 94. *Costello* was self-admittedly specific to its facts and is distinguishable. Here the alleged contract was not between two entities in the same business field. Defendants provided direct services, not merely consultation, and defendants, unlike the New York engineer in *Costello*, are not licensed in any state.

As the Attorney General states, the case law in New Jersey invalidates as against public policy contracts made by professionals who are not licensed in accordance with statute. *See, e.g., Dalton, Dalton, Little, Inc. v. Mirandi*, 412 F.Supp. 1001 (D.N.J. 1976); *In re Margow*, 77 N.J. 316, 390 A.2d 591 (1978); *Design–4 v. Masen Mountainside Inn, Inc.*, 148 N.J.Super. 290, 372 A.2d 640 (App.Div.1977); *Nitta v. Yamamoto*, 31 N.J.Super. 578, 107 A.2d 515 (App.Div. 1954); *Saks, supra*. Defendants' argument that none of these cases dealt with unlicensed individuals from other states is not persuasive. Since Management Recruiters transacts business in New Jersey, and is subject to the statute's requirements, the same result should obtain. Given the strong consumer protection purpose of the statute, there is no reason that the State's interest in regulating employment agencies is any less strong than that in regulating architects or real estate brokers.

The alleged contract is void and unenforceable as against the declared public policy of New Jersey that no person shall perform any of the functions of an employment agency in this State without first obtaining a license. Summary judgment for the plaintiff is thus appropriate.

An Order consistent with this Opinion will be entered.

---

**1.** In those cases in which state statutes have been struck down as violative of the Commerce Clause, the statutes have been found to clearly burden interstate commerce and favor local business, or not to sufficiently advanced a valid local interest to justify the burden, such as the prohibition of the use, within the state, of certain length double trailer trucks (*Kassel v. Consolidated Freightways, Corp.*, 450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981); *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. 429, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978)); the prohibition of foreign investment banking enterprises from competing with such state enterprises (*Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980)); the requirement that all cantaloupes sold within the state must be packed within the state (*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970))