CLARK ET AL. *v.* STATE
(Two Appeals in One Record)
[No. 144, October Term, 1952.]

*Decided April 15, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

R. Palmer Ingram, with whom was Malcolm J. Coan on the brief, for the appellants.

Kenneth C. Proctor, Assistant Attorney General, with whom was Edward D. E. Rollins, Attorney General, and Anselm Sodaro, State's Attorney for Baltimore City, on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

Here are appeals by Alvin Thomas Clark and Charles J. Ahern from judgments and sentences on indictments charging each with the possession of hypodermic syringes, needles, and a certain instrument and implement adapted for the use of habit forming drugs by hypodermic injections, contrary to Article 27, Section 366, 1951 Code.

On July 25, 1952, Lieutenant Frank L. Schmidt and Sergeant Kemple, of the Baltimore Police Department, in response to a telephone call, went to Pine's Drug Store at Baltimore and Gay Streets, entered and went behind the counter where the pharmacist was filling a prescription of Dr. W. M. Pannebaker issued to Charles J. Ahern, appellant. Lieutenant Schmidt testified that he knew Dr. Pannebaker's prescriptions had been irregular. When Ahern left the drug store the officer arrested him and took him to the Central Police Station. They there searched him and found thirteen tablets obtained by means of the prescription above referred to. An analysis of these tablets showed that each was composed of "a filler and $\frac{1}{16}$ of a grain morphine hydrochloride of the modified type which is sold under the name of dilaudid". When questioned by the police, Ahern stated he had been "on the junk" since the steel strike. When told he lived in Room 6 on the third floor of 1620 Shakespeare Street, a commercial rooming house occupied by seamen, the officers went to that address. The landlady escorted them to room 6, which was occupied by Ahern and Alvin Thomas Clark. The officers searched the room and in the left bureau drawer found a hypodermic syringe, a hypodermic needle and a home

made hypodermic syringe made from an eye dropper. They also found a spoon showing burned marks on the bottom and two empty dolophine bottles. Dolophine is synthetic morphine. One of the bottles contained a prescription mark made out to Alvin Clark by Dr. Pannebaker and filled at Kinnamon & Briele's Drug Store. The other bottle had no prescription mark on it. They found in Clark's suitcase an additional dolophine bottle, also another home made hypodermic syringe and needle and postal cards addressed to Clark. In the bottom bureau drawer the officers found an additional hypodermic syringe without a needle attached. Later the same afternoon Lieutenant Schmidt saw Alvin Clark seated in the Central Police Court room waiting to see Charles Ahern. Clark was placed under arrest. He told the officers he had "been on it" since the steel strike. He also said he had bought five pounds of raw opium in a foreign country and had been chewing a piece of it three times a day, about the size of his fingernail, and since he had run out of this opium and since the steel strike he had been going to Dr. Pannebaker and getting prescriptions for synthethic morphine to quiet his nerves. Later that afternoon both of the appellants became ill and the officers permitted each to take "a shot" instead of sending them to the hospital. At that time each of the appellants identified the particular needle used by him as his needle. Dr. Joe W. Quillan, Chemist in Charge of the Baltimore Laboratory, Bureau of Internal Revenue, in addition to testifying as aforesaid what the tablets contained, said the other items seized by the police contained traces of both derivatives of opium and of the synthetic narcotic previously referred to.

It was stipulated by the State that the prescription of Dr. Pannebaker was a legal prescription and that the police had searched the room occupied by the appellants. All of the testimony offered by the State was taken subject to exception. At the end of the State's case, counsel for the appellants moved that all the testimony be stricken out on the grounds that the arrest was illegal

136

and any and all evidence afterwards acquired was illegal and inadmissible against the appellants in the absence of warrants for arrest and search warrants. Neither of the appellants testified. By stipulation, it was agreed that these cases would be argued together with the case of *Stevens v. State*, 202 Md. 117, 95 A. 2d 877, and, as the legal question presented in these cases is identical with that presented in the *Stevens* case, the argument set forth in appellant's and appellee's briefs in that case be incorporated in the instant case.

For the same reasons and under the same authorities given in the case of *Stevens v. State*, 202 Md. 117, 95 A. 2d 877, just decided, the judgments will be affirmed.

*Judgments affirmed, with costs.*