### STEVENS *v.* STATE

[No. 107, October Term, 1952.]

*Decided April 15, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*R. Palmer Ingram,* with whom was *Malcolm J. Coan* on the brief, for the appellant.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General, Anselm Sodaro, State's Attorney for Baltimore City,* and *William C. Rogers, Jr., Assistant State's Attorney,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Clyde N. Stevens from a judgment and sentence for unlawful possession of a hypodermic syringe and a certain instrument and implement adapted for the use of habit forming drugs by hypodermic injections, contrary to Article 27, Section 366, 1951 Code. The offense is a misdemeanor.

On August 9, 1952, Officer Kenneth Vought, of the Narcotic Squad of the Baltimore Police Department, having been given the description of a man suspected of violating the narcotic laws, at 9 P.M. located such a man, the appellant, at St. Paul and Center Streets in Baltimore. The trial judge would not permit testimony as to the source of Officer Vought's information. Stevens was placed under arrest and searched by the officer. The search of his person showed a prescription made out to James H. DeLisle, 714 St. Paul Street, for thirty-five one-quarter grain morphine tablets prescribed by Dr. William Pannebaker. When asked by Sergeant Joseph

Carroll where he had obtained the prescription Stevens stated James DeLisle had given it to him. He also said he had been using drugs off and on for twenty-five years and averaged about one-quarter of a grain a day. An examination of Stevens showed fresh marks on his left arm. After the arrest, Officer Vought went to appellant's apartment at 1415 Linden Avenue and found in a bureau drawer, concealed in the bottom of a jewelry box, one rubber hose, one needle holder, one improvised syringe and two emptly vials. These were offered in evidence. Dr. Joe E. Quillan, Chemist in Charge of the Baltimore Laboratory, Bureau of Internal ₁Revenue, testified that he examined the syringe and found it to be an improvised top of a hypodermic syringe, "that is the bottom of the tip of the medicine dropper was wrapped with a thread in order to hold the needle, and that the medicine dropper contained traces of derivatives of opium." Stevens told Sergeant Carroll he used the home made syringe "to shoot up". The police officers had no warrant for the arrest of the appellant nor did they have a search and seizure warrant for his apartment.

The appellant specifically contends that the arrest and the search of his person without a warrant and the subsequent search of his home without a search warrant is in violation of the rights guaranteed under Articles 22 and 26 of the Bill of Rights of Maryland and in violation of the guarantees under the Fourth and Fifth Amendments of the Constitution of the United States and in derogation of the Fourteenth Amendment to the Federal Constitution and therefore the evidence obtained as the result of these searches should not have been admitted in evidence over his objection.

Code, Article 27, Section 368, 1951 Code, Sub-title "Health—Narcotic Drugs", Chapter 59, Section 285U, Acts of 1935, provides: "It is hereby made the duty of the State Department of Health, its officers, agents, inspectors and representatives, and of all peace officers within the State, and of all State's Attorneys, to enforce all provisions of this subtitle, except those specifical-

ly delegated, and to co-operate with all agencies charged with the enforcement of the laws of the United States, of this State and of all other States, relating to narcotic drugs. In all prosecutions under this sub-title, the provisions of Section 5 of Article 35 of the Code of Public General Laws shall not apply."

Article 35, Section 5, from which the search for narcotics is excepted by Article 27, Section 368, *supra,* and commonly known as the Bouse Act, provides that no evidence in the trial of misdemeanors shall be deemed admissible where the same shall have been procured by, through, or in consequence of any illegal search or seizure or of any search and seizure prohibited by the Declaration of Rights of this State; nor shall any other evidence in such cases be admissible if procured by, through, or in consequence of a search and seizure, the effect of the admission of which would be to compel one to give evidence against himself in a criminal case. Before the enactment in 1929 of the Bouse Act, *supra,* this Court has held that where evidence offered in a criminal trial of a misdemeanor is otherwise admissible, it will not be rejected because it was obtained illegally. *Meisinger v. State,* 155 Md. 195, 141 A. 536, 142 A. 190. See also to the same effect *Heyward v. State,* 161 Md. 685, 158 A. 897; *Baum v. State,* 163 Md. 153, 161 A. 244; *Salsburg v. State,* 201 Md. 212, 217, 94 A. 2d 280, 282. We are therefore of the opinion, as prosecutions for narcotics are excepted from the Bouse Act, *supra,* that the articles here in question were properly admitted in evidence.

Appellant strongly relies on the case of *Rochin v. People of California,* 342 U. S. 165, 72 S. Ct. 205, 207, 96 L. Ed. 183, decided January 2, 1952. In that case the deputy sheriffs of Los Angeles County forced open the door to Rochin's room. They found petitioner sitting partly dressed on the side of the bed upon which his wife was lying. On a stand beside the bed the officers saw two capsules. Rochin seized the capsules and put them in his mouth. A struggle ensued in the course of which the three officers jumped on him and tried to

extract the capsules. They were unable to extract these capsules. Rochin was handcuffed and taken to a hospital where, at the direction of the officers, a doctor forced an emetic solution through a tube into Rochin's stomach against his will. The stomach pumping caused vomiting and in the vomited matter were found two capsules which contained morphine. Justice Frankfurter, who delivered the opinion of the court in that case, said the following, among other things, in reversing the conviction of Rochin: "Accordingly, in reviewing a State criminal conviction under a claim of right guaranteed by the Due Process Clause of the Fourteenth Amendment, from which is derived the most far-reaching and most frequent federal basis of challenging State criminal justice, 'we must be deeply mindful of the responsibilities of the States for the enforcement of criminal laws, and exercise with due humility our merely negative function in sub-jecting convictions from state courts to the very narrow scrutiny which the Due Process Clause of the Fourteenth Amendment authorizes.' *Malinski v. New York,* 324 U. S. 401, 412, 418. Due process of law, 'itself a historical product,' *Jackman v. Rosenbaum Co.,* 260 U. S. 22, 31, is not to be turned into a destrictive dogma against the States in the administration of their systems of criminal justice. * * * We are compelled to conclude that the proceedings by which this conviction was obtained do more than offend some fastidious squeamishness or pri-vate sentimentalism about combatting crime too ener-getically. This is conduct that shocks the conscience. Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of the government to obtain evidence is bound to offend even hardened sensibili-ties. They are methods too close to the rack and the screw to permit of constitutional differentiation. * * * In deciding this case we do not heedlessly bring into question decisions in many States dealing with essential-ly different, even if related, problems. We therefore

put to one side cases which have arisen in the State courts through use of modern methods and devices for discovering wrongdoers and bringing them to book. It does not fairly represent these decisions to suggest that they legalize force so brutal and so offensive to human dignity in securing evidence from a suspect as is revealed by this record. Indeed the California Supreme Court has not sanctioned this mode of securing a conviction. It merely exercised its discretion to decline a review of the conviction. All the California judges who have expressed themselves in this case have condemned the conduct in the strongest language. *. * * On the facts of this case the conviction of the petitioner has been obtained by methods that offend the Due Process Clause. The judgment below must be reversed." There was nothing in this case to suggest that the Supreme Court was overruling the case of *Wolf v. Colorado,* 1949, 338 U. S. 25, 69 S. Ct. 1359, 1361, 93 L. Ed. 1782, followed by that Court in a long line of cases. *Bratburd v. State,* 200 Md. 96, 88 A. 2d 446.

In *Schwartz v. Texas,* 344 U. S. 199, 73 S. Ct. 232, 97 L. Ed. (Advance p. 157, 159-160), decided December 15, 1952, evidence was obtained against Schwartz by tapping a telephone line and recording telephone conversations. This evidence was admitted by the Texas Court gainst Schwartz. Justice Minton, in delviering the opinion of the Supreme Court of the United States, in affirming the conviction, said the following: "Although the intercepted calls would be inadmissible in a federal court, it does not follow that such evidence is inadmissible in a state court. Indeed, evidence obtained by a state officer by means which would constitute .an unlawful search and seizure under the Fourth Amendment to the Federal Constitution is nonetheless admissible in a state court, *Wolf v. Colorado,* 338 U. S. 25, 93 L. Ed. 1782, 69 S. Ct. 1359, while such evidence, if obtained by a federal officer, would be clearly inadmissible in a federal court. *Weeks v. United States,* 232 U. S. 383, 58 L. Ed. 652, 34 S. Ct. 341." See also *Stefanelli*

*et al. v. Minard et al.*, 343 U. S. 117, 72 S. Ct. 118, 96 L. Ed. 138, decided December 3, 1951.

The action of the police officers here in searching the person of the appellant and his apartment is by no means comparable to that of the officers in the case of *Rochin v. California, supra,* where the officers by force extracted evidence from the stomach of the accused. Finding the evidence admissible the judgment will be affirmed. *Salsburg v. State, supra.*

*Judgment affirmed, with costs.*