## RAYMOND EUGENE BOYD *v.* STATE OF MARYLAND

[No. 590, September Term, 1971.]

*Decided April 25, 1972.*

276

The cause was argued before MORTON, ORTH and POW-ERS, JJ.

*Curtis Jay Karpel* for appellant.

*Harry A. E. Taylor, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Raymond G. Thieme, Jr., State's Attorney for Anne Arundel County,* and *Frank R. Weathersbee, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

By ch. 403, Acts 1970, effective 1 July 1970, the General Assembly repealed various laws pertaining and relating to narcotic drugs and enacted a new law codified as Art. 27, §§ 276-302 in lieu thereof under the subheading "Health—Controlled Dangerous Substances." It set out its findings and declarations and stated the purpose of the new law:

"The General Assembly finds and declares that many of the substances included with this subheading have a useful and legitimate medical purpose and are necessary to maintain the health and general welfare of the people of the State of Maryland.

The General Assembly, however, finds and declares that the illegal manufacture, distribution, possession, and administration of controlled dangerous substances and related paraphernalia in order to insure their availability for legitimate medical and scientific purposes, It is the purpose of this subheading to establish a uniform law controlling the manufacture, distribution, possession, and administration of controlled dangerous substances and related paraphernalia in order to insure their availability for legitimate medical and scientific purposes, but to prevent their abuse which results in a serious health problem to the individual and represents a serious danger to the welfare of the people of the State of Maryland." Section 276 (a).

It then clearly enunciated how the provisions of the new law were to be interpreted and construed:

"The provisions of this subheading shall be liberally interpreted and construed so as to effectuate its general purpose as stated hereinabove." Section 276 (b).

Section 287 makes it a misdemeanor, subsection (e), for any person unlawfully "to possess or distribute controlled paraphernalia," subsection (d). "Controlled paraphernalia" shall mean "a hypodermic syringe, needle or other instrument or implement or combination thereof adapted for the administration of controlled dangerous substances by hypodermic injections under circumstances which reasonably indicate an intention to use such controlled para-

phernalia for purposes of illegally administering any controlled dangerous substance," subsection (d) (i).[1] Section 298 (a) deals with the burden of proof:

"It shall not be necessary for the State to negate any exemption, proviso or exception set forth in this subheading in any complaint, information, indictment, or other pleading or in any trial, hearing, or other proceeding under this subheading, and the burden of proof of any such exemption, proviso or exception shall be upon the person claiming its benefit. In the absence of proof that a person is the duly authorized holder of an appropriate registration or order form issued under this subheading, he shall be presumed not to be the holder of such registration or form, and the burden of proof shall be upon him to rebut such presumption."

An indictment was returned against RAYMOND EUGENE BOYD presenting that on 10 June 1971 he unlawfully possessed controlled paraphernalia as proscribed by Art. 27, § 287 (d) and he was convicted of the charge at a bench trial in the Circuit Court for Anne Arundel

---

1. For designation of other "controlled paraphernalia" see § (d) (ii) and (iii). Subsection (iii) was added by ch. 493, Acts 1971, effective 1 July 1971. For definition of "controlled dangerous substance" see § 277 (f).

The former law, Art. 27, § 297, proscribed the possession of paraphernalia in these terms:

"No person except a manufacturer or a wholesaler or a retail dealer in surgical instruments, pharmacist, physician, dentist, veterinarian, nurse or interne, shall at any time have or possess a hypodermic syringe or needle or any instrument or implement adapted for the use of habit-forming drugs by hypodermic injections and which is possessed for the purpose of administering habit-forming drugs, * * *."

Both the former law and the present law prescribe that the paraphernalia be "adapted" for the use of prohibited substances "by hypodermic injections." But while the old law required proof that such paraphernalia "is possessed for the purpose of administering" the substances, the new law imposes the lesser burden on the State of showing possession of the paraphernalia "under circumstances which reasonably indicate an intention" to so use it.

County. The sole question he presents on appeal concerns the sufficiency of the evidence.

On 10 June 1971 Boyd was incarcerated in the Maryland House of Correction serving an 18 month sentence for non-support to which had been added a 9 month sentence for escape. He was working in the laundry in the industrial compound, which is inside the fence but outside the main building, and it was prison routine to search under a spot check procedure the inmates working in the laundry upon their return to the main building. Lt. Thad Oppert, the assistant commander of the industrial compound testified: "[W]e give them a body search, check their laundry bags and any other articles they may have on them." He explained that the inmate would have a bag containing his laundry "plus [at times] his customer's [bag] he's doing laundry for." On the day in question Boyd was searched and two plastic tubes containing "two 26 gauge ¾ inch hypodermic needles" were found in a laundry bag Boyd was carrying. They were in the bottom of the bag under Boyd's laundered clothing. Boyd "stated it was his clothes and his bag." Oppert said it was against the Institution's rules to have hypodermic needles in possession. He also asserted that hypodermic needles were used "for injections, of fluids, drugs."

Trooper First Class William F. George, a member of the Maryland State Police for eight years, testified by reason of experience gained in investigating controlled dangerous substance violations he was familiar with such substances and the means by which they were injected. He said that the needles found on Boyd were of the type used for "injecting of a drug into the body, usually a heroin derivative." [2] Through his some fifty investigations of violations of the controlled dangerous substances laws at the House of Correction he had found that heroin and other narcotic controlled dangerous substances "existed illegally" in that Institution. Boyd offered no evidence.

---

2. Heroin is a controlled dangerous substance. Code, Art. 27, § 279 (a) (3) b 6.

We have no difficulty in determining that the direct evidence before the court was sufficient in law to establish that hypodermic needles were in the possession of Boyd, and that they were adapted for the administration of controlled dangerous substances by hypodermic injections. We further find, interpreting and construing the provisions of § 287 (d) (i) so as to effectuate their expressed general purpose in accordance with the Legislative dictate, it was a rational inference providing evidence sufficient in law under the circumstances to indicate reasonably that Boyd possessed the needles with an intention to use them for purposes of illegally administering a controlled dangerous substance, particularly in the light of his failure to meet the statutory burden imposed on him to show that he possessed them lawfully. Thus the judgment of the lower court on the evidence was not clearly erroneous and we may not set it aside. Maryland Rule 1086. *Williams v. State,* 5 Md. App. 450.

*Judgment affirmed.*