PILAR LOWENTHAL *v.* MORTON E. ROME, Surviving
Personal Representative of the Estate of
Jean Arthur Lowenthal ET AL.

[No. 174, September Term, 1981.]

*Decided September 3, 1982.*

*Motion for reconsideration filed October 4, 1982; denied
October 4, 1982.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON and COUCH, JJ.

*John D. Alexander, Jr.,* with whom were *William T. Kerr* and *Allen, Thieblot & Alexander* on the brief, for appellant.

*Stephen C. Winter* and *Morton E. Rome,* with whom were *White, Mindel, Clarke & Hill* on the brief, for appellees.

COUCH, J., delivered the opinion of the Court.

We are here called upon to determine whether the Orphans' Court of Baltimore City erred in ordering a renunciation,[1] filed by Mrs. Pilar Lowenthal in the estate of Mr. Jean Arthur Lowenthal, to be of no force and effect.

The underlying facts are, in pertinent part, uncontradicted and may be capsulized as follows. In 1959, Pilar, the appellant, and Jean, the appellee's decedent, journeyed from their home in Malaga, Spain, to Gibraltar, where they were married by a British Magistrate. Pilar, a Spanish citizen, was of the Roman Catholic faith and Jean, an American citizen domiciled in Maryland, was a non-Catholic. At that time in Spain, Pilar, as a Catholic, could only marry another Catholic in a religious ceremony

---

1. Md. Code (1974, 1981 Cum. Supp.), Estates & Trusts Article, § 3-203, gives the surviving spouse the right to take one-half of the decedent's estate if there is no surviving issue, or one-third if there is surviving issue, instead of the property left to him by will.

and could marry a non-Catholic in a civil ceremony only if she renounced her Catholic faith. Because Pilar did not wish to renounce her faith and Jean did not wish to convert to Catholicism, they married in Gibraltar under English law. After their marriage, the parties returned to Spain and their Malaga home in which they had previously resided together for a number of years. In 1961, the parties separated and the appellant left the household with the parties' two children who had been born in 1956 and 1959, prior to their Gibraltar marriage. That same year, one Anna Larson Bernadotte and her son moved into Mr. Lowenthal's home.

In 1962, Mr. Lowenthal successfully sought in the Spanish courts an annulment of his marriage to the appellant, which was ultimately affirmed by Spain's highest court, the Supreme Court. In 1966, Mr. Lowenthal married Ms. Bernadotte. Mr. Lowenthal died testate in 1977. Ms. Bernadotte had predeceased him in 1975. Mr. Lowenthal left an estate in Maryland which was being administered by the Orphans' Court of Baltimore City. Having been ignored in the appellee's will, the appellant filed in the Orphans' Court a renunciation of all provisions thereof and elected to take the intestate share of his estate pursuant to Maryland Code (1974, 1981 Cum. Supp.), Estates and Trusts Article, § 3-203. After certain procedural sparring, not pertinent here, the Orphans' Court held a hearing and concluded that it would recognize the Spanish decree of annulment, thereby rendering appellant's renunciation of no force and effect. This appeal ensued and we granted certiorari before consideration by the Court of Special Appeals to address an issue of public importance.

Section 3-203 of the Estates and Trusts Article provides that a surviving spouse may elect to take the share which he might take in intestacy instead of the property left to him by will. Section 1-202 of the Article spells out who may not be considered a surviving spouse; it reads as follows:

"(a) *Valid divorce.* — No person who is validly divorced a vinculo matrimonii from the decedent or

whose marriage to the decedent has been validly annulled is a surviving spouse.

(b) *Divorce in another state.* — No person who has voluntarily appeared in a proceeding in which an a vinculo matrimonii divorce between the decedent and the survivor, or an annulment of their marriage was obtained, even though not recognized as valid in this state, is a surviving spouse. This subsection does not apply if the parties to the divorce or annulment subsequently remarry each other.

(c) *Marriage to a third party.* — No person who participates in a marriage ceremony with a third person, after a decree or judgment of divorce or annulment obtained by the decedent, is a surviving spouse.

(d) *Conviction of bigamy.* — No person who has been convicted of bigamy while married to the decedent is a surviving spouse."

The appellant argues that she was validly married to Mr. Lowenthal and that the Orphans' Court should not have recognized the Spanish annulment decree because it was obtained on a ground not recognizable in Maryland and against the strong public policy of this State. On the other hand, the appellee contends that Mrs. Lowenthal is not a surviving spouse because, under section 1-202 (a), the Spanish decree was valid in Spain and should be recognized in Maryland and because, under section 1-202 (b), of her voluntary appearance in the Spanish proceeding. The Orphans' Court, in agreeing in part with appellee's position, stated:

"We are inclined to agree her appearance was not 'voluntary' in the sense that she was not the original moving party. However, she was faced with an alternative, and to the extent she exercised her options, her appearance was voluntary. We recognize that the eventual definition of 'voluntary'

as used in *Section 102 (b)* of the *Estates and Trusts Article* must come from a higher court."

Thereafter, that court stated that it would not rest its decision on section 1-202 (b) but on section 1-202 (a). In doing so, it stated:

"It may be observed here that, although Maryland prohibits common law marriages within our state, the public policy of Maryland has long recognized a foreign common law marriage, provided, of course, it is valid where consummated."

Penultimately, the court stated:

"While *Section 1-202 (a)* of the *Estates and Trusts Article* does not use the same language regarding 'validity' as does *Section 1-202 (b)*, we are bound to give effect to our statute as it is written. Since *Section 1-202 (a)* simply uses the word 'valid', it must be tested by the standards of the jurisdiction where the decree of annulment was granted, the Republic of Spain."

Without further elucidation, the court then held that the appellant's renunciation was of no force and effect because the marriage of the parties had been dissolved by the Supreme Court of Spain in 1965. We shall affirm the order of the Orphans' Court, not, however, for the reason utilized by that court, about which we express no opinion.

In our view, section 1-202 (b), set out above, governs the fact situation presented in this appeal. By section 1-202, the legislature has provided who may not be a surviving spouse. Sub-section (b) makes clear that neither party who voluntarily appears in a proceeding where, in pertinent part, an annulment of their marriage is obtained, even though not recognized as valid in this state, may be deemed a surviving spouse upon the death of the other spouse. The critical question, then, is what did the legislature mean by "voluntarily appear" within the context of this sub-section.

Judge Cole, speaking for the Court in *State v. Berry,* 287 Md. 491, 495-496, 413 A.2d 557, 560 (1980), stated:

"As we have stated many times, the cardinal rule of statutory construction is to ascertain and carry out the actual intention of the legislature. *Board v. Stephans,* 286 Md. 384, 408 A.2d 1017 (1979); *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 407 A.2d 738 (1979); *S.A.S. Personnel Consult. v. Pat-Pan,* 286 Md. 335, 407 A.2d 1139 (1979); *Unnamed Physician v. Comm'n,* 284 Md. 1, 400 A.2d 396 (1979). The statutory language itself provides the clearest indication of the legislative intent and is thus the primary source for all statutory construction. *Board v. Stephans, supra; Harbor Island Marina v. Calvert Co., supra.* We also adhere to the principle that the court should confine itself to construing the statute according to the ordinary and natural signification of the words used without resorting to subtle or forced interpretations designed to limit or extend the operation of the statute. *Harbor Island Marina v. Calvert Co., supra; Mauzy v. Hornbeck,* 285 Md. 84, 400 A.2d 1091 (1979); *Massage Parlors, Inc. v. City of Balto.,* 284 Md. 490, 398 A.2d 52 (1979). When the words used convey a clear and plain meaning, there is no need to look beyond the statute to ascertain the legislative intent. *Collier v. Connolley,* 285 Md. 123, 400 A.2d 1107 (1979); *Mauzy v. Hornbeck, supra,* 285 Md. at 93; *Massage Parlors, Inc. v. City of Balto., supra,* 284 Md. at 494-95."

It is clear from the language of sub-section (b) that the legislature intended to disqualify as a surviving spouse *any* person who voluntarily appeared in a proceeding where the marriage was annulled or a divorce obtained even though not recognized as valid in Maryland. Patently, this translates into a legislative intent to bar one from being a surviving spouse even though the divorce or annulment may have been obtained for reasons which would not be recognized in Maryland.

"Voluntary" has been variously defined as "acting or done

of one's own free will without valuable consideration," "acting or done without any present legal obligation...," "not accidental: intentional." Webster's Third New International Dictionary 2564 (1976). Black's Law Dictionary 1413 (5th ed. 1979), defines "voluntary," in part, as "Done by design or intention. Proceeding from the free and unrestrained will of the person. Produced in or by an act of choice." In *State v. Comes,* 237 Md. 271, 277, 206 A.2d 124, 128 (1965), the Court stated:

> "The Oxford English Dictionary, Vol. 12, describes 'voluntarily' as being 'of one's own free will and accord; without compulsion, constraint or under influence by others; freely, willingly.' "

In the instant case, we are advised that the Spanish proceeding began when Mr. Lowenthal filed an action for "declaratory judgment" [2] seeking to have his marriage to the appellant declared a nullity. It would appear from the record that Mrs. Lowenthal was served with some kind of process, and answered by attacking the court's jurisdiction over the subject matter and, separately, by a plea to the merits. We find nothing in the record to suggest that her appearance was compelled under any kind of penalty such as exposure to being held in contempt of court and subject to incarceration. We also observe that it was appellant's burden to prove what the Spanish law in this respect was, as it would appear such law would not be subject to judicial notice under Code (1974, 1980 Repl. Vol.), Courts & Judicial Proceedings Article, § 10-501, absent a showing that Spain had a system of law based on the common law of England. [3] Such proof being absent, we are not at liberty to assume that the appellant was compelled to appear in the proceedings brought by the appellee's decedent. It, therefore, appears

---

2. This "declaratory judgment" is not to be confused with a proceeding under Code (1974, 1980 Repl. Vol.), Cts. & Jud. Proc. Art., § 3-401 *et seq.*

3. § 10-501. Judicial Notice.

"Every court of this State shall take judicial notice of the common law and statutes of every state, territory, and other jurisdiction of the United States, and of every other jurisdiction having a system of law based on the common law of England."

that the appellant had a choice whether or not to appear. She chose to appear and, in doing so, she exercised her free will without compulsion. It seems to us that by so doing the appellant, within the context of sub-section (b) of section 1-202, voluntarily appeared and, thus, cannot be a surviving spouse.

Accordingly, we hold, on this record, that the appellant falls within the terms of sub-section (b) of section 1-202 and, therefore, cannot be deemed a surviving spouse. We shall affirm the order of the Orphans' Court.

*Order affirmed.*
*Costs to be paid by appellant.*