ANTHONY CURTIS DOSWELL
*v.* STATE OF MARYLAND

[No. 753, September Term, 1982.]

*Decided February 4, 1983.*

The cause was submitted on briefs to WILNER, WEANT and
ALPERT, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *John L. Kopolow, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Jillyn K. Schulze, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Olga Bruning, Assistant State's Attorney for Baltimore City,* for appellee.

WILNER, J., delivered the opinion of the Court.

On July 13, 1981, while on routine patrol in an unmarked police car, Baltimore City police officer Mark Labonta observed appellant, whom he knew to be a heroin addict, in the company of another individual known as "Little Rock." Labonta saw appellant hand Little Rock an envelope. "Almost simultaneously," according to Labonta, the two spotted the unmarked car. Little Rock dropped the envelope and he and appellant walked away, appellant entering a nearby carryout shop.

Labonta retrieved the envelope, in which were nine smaller glassine envelopes containing a white powder that Labonta suspected (and a laboratory report later confirmed) to be heroin. Labonta thereupon entered the carryout shop, arrested appellant, and proceeded to search him. In one of appellant's socks, Labonta found a hypodermic syringe (consisting of a barrel and a plunger) and a ten-dollar bill. No needle or connective device by which a needle could be attached to the syringe was found on appellant.

As a result of this episode, appellant was charged in an eight-count indictment with a variety of offenses under the controlled dangerous substance laws including, as count four, that he "unlawfully did POSSESS certain Controlled Paraphernalia, to wit: a hypodermic syringe which was adapted for the administration of Controlled Dangerous Substances by hypodermic injection said POSSESSION being under circumstances which reasonably indicate an intention to use such Controlled Paraphernalia, for the purpose of illegally administering Controlled Dangerous Substances. . . ."

Following trial, the State decided to press only four of the eight counts, three involving appellant's alleged possession and attempted distribution of the heroin found in the envelope and the fourth, quoted above, charging the possession of controlled paraphernalia. The jury acquitted appellant of the heroin charges, but convicted him on the fourth count. From that conviction and the four-year prison sentence imposed thereon, appellant brings this appeal, complaining:

"I. The evidence was insufficient to sustain the conviction for possession of controlled paraphernalia.

II. The trial judge erroneously instructed the jury in response to a jury question asking for further explanation of the charge of possessing the hypodermic syringe."

We find no error, and shall therefore affirm.

### (1) *Sufficiency of Evidence*

Unlike most complaints about the sufficiency of evidence, the issue raised by appellant involves more a question of statutory construction than a debate over the quantum of proof presented at trial. His conviction rested on the fact that, under the circumstances related above, he was found in possession of a hypodermic syringe *sans* needle and connective device for attaching a needle. He claims that that is not enough — that possession of the syringe alone, absent such attachments as would cause it to be actually usable for hypodermic injection, is not a criminal act.

The relevant statute, upon which count four of the indictment rested, and to which it referred, is Md. Code Ann. art. 27, § 287 (d) (i). The statute provides:

"Except as authorized by this subheading, it is unlawful for any person:

\* \* \*

(d) To possess or distribute controlled paraphernalia which shall mean (i) a hypodermic syringe, needle or other instrument or implement or combination thereof *adapted for the administration of controlled dangerous substances by hypodermic injections* under circumstances which reasonably indicate an intention to use such controlled paraphernalia for purposes of illegally

administering    any    controlled    dangerous substance...." (Emphasis supplied.) [1]

The precise question is whether the italicized language — "adapted for the administration of controlled dangerous substances by hypodermic injections" — modifies "hypodermic syringe" and "needle," or only the phrase that follows — "or other instrument or implement or combination thereof." Appellant's "sufficiency" argument is premised on the supposition that the language modifies all three coordinates, whence springs his contention that, as a syringe alone is not "adapted" for the administration of illegal drugs, its possession is not illegal under § 287. We think that he is misreading the statute.

The control over narcotics paraphernalia was introduced into the Maryland law in 1935, when the General Assembly adopted a modified version of the newly proposed Uniform Narcotic Drug Act.[2] *See* Acts of 1935, ch. 59. Section 285S, which was added to art. 27 of the (1924) Code, provided:

"No person except a manufacturer or a wholesaler or a retail dealer in surgical instruments, pharmacist, physician, dentist, veterinarian, nurse or interne, shall at any time have or possess a hypodermic syringe or needle or any instrument or implement adapted for the use of habit forming drugs by hypodermic injections and which is possessed for the purpose of administering habit forming drugs, unless such possession be authorized by the certificate of a physician issued within the period of one year prior hereto."

_____

1. There follows, after this provision, two additional paragraphs specifying additional types of prohibited paraphernalia, paragraph (ii) involving containers and envelopes of one kind or another and paragraph (iii) involving chemicals usable as "cutting" or diluting agents.

2. The Uniform Narcotic Drug Act was originally approved by the National Conference of Commissioners on Uniform State Laws and by the American Bar Association in 1932. *See* 9A Uniform Laws Annot. 229. It was initially introduced at the 1933 Session of the General Assembly, but action on it was deferred pending a study by the State Department of Health because of potential inconsistencies with existing Federal law. *See* Report of the Maryland State Board of Health (1934-37).

The section remained in the law as originally enacted until 1970 when, as part of a general revision of the State's narcotic laws, it was reenacted in its present form.

The 1970 Act repealed the thirty-five year old Uniform Narcotic Drug Act and replaced it with what became the precursor of the Uniform Controlled Substances Act.[3] Although major changes were made in those aspects of the law relating to the various drugs sought to be controlled, and the list of controlled paraphernalia was expanded to include containers and diluting agents (see footnote 1, ante), very little change was made to the basic proscription of old § 285S (then § 297).[4] Indeed, the only significant change in that section, as it pertained to implements usable for hypodermic injection, was the clear substitution of an objective test for determining the possessor's intent; and, in light of the judicial construction of the old law, the significance of that change may have been more apparent than real.

From 1935 to the present, no Maryland court has examined critically the precise issue now before us. Until 1971, convictions for possession of paraphernalia usable for hypodermic injections were routinely sustained without discussion as to whether the various implements in question — needles, syringes, "improvised" syringes, "home made" syringes — were, in fact, "adapted" for the use or

---

3. The 1970 Act (Acts of 1970, ch. 403) has a rather extensive history. A great deal of activity was then occurring in the field of drug abuse, both in Maryland and elsewhere. See, for example, Interim Report Of The Maryland Commission To Study Problems Of Drug Addiction, 1966 and 1967; Drug Abuse Study (1969), a joint Federal-State effort; Acts of 1969, ch. 404. The 1970 Act itself was the product of a special subcommittee of the Senate Judicial Proceedings Committee, which worked together with representatives from the Governor's office, the House of Delegates, the U.S. Department of Justice, and local law enforcement agencies. It was patterned to a large extent after Federal legislation then pending in Congress and which ultimately was enacted as the Comprehensive Drug Abuse Prevention and Control Act of 1970 (PL 91-513; 21 U.S.C. § 801, et seq.).

4. The section on paraphernalia remained somewhat special to Maryland. It does not appear in the Federal act (PL 91-513) or in the Uniform Controlled Substances Act as approved (in 1970) by the National Conference of Commissioners On Uniform State Laws. As noted infra, some other States have adopted versions of it.

652

administration of illegal drugs. *See, for example, Reed v. State,* 225 Md. 566 (1961), *cert. den.* 368 U.S. 958 (1962); *Peachie v. State,* 203 Md. 239 (1953); *Brown v. State,* 3 Md.App. 90 (1968); *Anderson v. State,* 9 Md.App. 639, *cert. den.* 259 Md. 729 (1970); *Jason, Johnson and Moore v. State,* 9 Md.App. 102, *cert. den.* 258 Md. 728, 729 (1970); and *cf. Stevens v. State,* 202 Md. 117 (1953), and *Clark v. State,* 202 Md. 133 (1953).

The first case to give particular mention to the "adapted for the use . . . ." language was *Downes v. State,* 11 Md.App. 443, *cert. den.* 262 Md. 746 (1971). The defendant there, arrested in connection with a reported breaking and entering, was carrying "a little paper bag" which "contained a hypodermic syringe and needle." It is not clear from either the briefs or the opinion in the case whether the syringe and the needle were connected. In response to an argument that the evidence was insufficient to sustain the conviction under § 285S (then § 297 of art. 27), we said, simply (pp. 450-51):

> "There was evidence that the bag containing a hypodermic syringe and needle were in appellant's possession. The court found that the syringe and needle were 'narcotic paraphernalia.' We cannot say that the court's judgment that the hypodermic syringe and needle were 'adapted for the use of habit-forming drugs by hypodermic injections' and were possessed by appellant 'for the purpose of administering habit-forming drugs' was clearly erroneous. In the circumstances this was a rational inference."

In *Boyd v. State,* 15 Md.App. 275 (1972), we sustained a conviction under the new law (§ 287 (d) (i)) based on evidence that the defendant was found in possession of "two plastic tubes containing 'two 26 gauge 3/4 inch hypodermic needles.' " *Id.* at 279. Boyd was an inmate at the House of Correction. The items were found in a laundry bag he was carrying, and there was evidence that the needles "were of the type used for 'injecting of a drug into the body, usually

a heroin derivative.' " *Id.* No syringe or other device usable as a syringe was found in the defendant's possession, and there was no evidence that controlled substances could be hypodermically injected without such a syringe or device.

Because *Boyd* appeared to represent the first prosecution under the new law to reach a reported Opinion of this Court, we took the opportunity, in a footnote on page 278, to make a brief comparison of the two laws. In that context, we unfortunately stated that "[b]oth the former law and the present law prescribe that the paraphernalia be 'adapted' for the use of prohibited substances 'by hypodermic injections.' " That statement was not necessary to the result reached in the case, and, indeed, it seems inconsistent with that result in light of the evidence upon which the conviction was based. More important, it is not a correct interpretation of the law and we hereby expressly reject it.

The basic rules of statutory construction are clear and oft-repeated. The cardinal rule is to ascertain and carry out the intention of the legislature. If the actual language of the statute conveys a clear and plain meaning, there is no need to look further for it. *See,* in general, *State v. Berry,* 287 Md. 491 (1980); *Lowenthal v. Rome,* 294 Md. 277 (1982). To the extent that there may be some ambiguity, a number of rules or guidelines may be used to ascertain the legislative intent, one of which is that the statute should be read in a commonsense manner to avoid unreasonable or absurd results. *See Coerper v. Comptroller,* 265 Md. 3, 6 (1972).

The clear thrust and purpose of § 287 (d) (i) is to prohibit the possession of devices that are usable for administering controlled substances by hypodermic injection when the circumstances indicate an intent to use them for that purpose. A syringe (barrel and plunger) and a needle fit that description *per se.* They do not have to be "adapted" to be usable for hypodermic injection; they merely have to be used.

What *do* have to be adapted for such use, and what the phrase in question was obviously designed to cover, are those various types of other implements which are not usable for

such a purpose in their original state, but which, through modifications, can be made so usable. *See, for example, Stevens v. State, supra,* 202 Md. 117, 119, where the implement was an "improvised syringe," described as a medicine dropper, the bottom of which "was wrapped with a thread in order to hold the needle." The cases, and the literature generally, are replete with references to such improvised devices which, through adaptation, become, in effect, *ersatz* syringes.

This is consistent with the conclusions reached in other States. In *Moore v. State,* 223 N.E.2d 899 (Ind. 1967), the Supreme Court of Indiana considered the same argument made here in connection with its paraphernalia statute prohibiting the possession of "any hypodermic syringe or needle or any instrument adapted for the use of narcotic drugs by injection in a human being." The Court held, at p. 902:

> "We are compelled to agree with the appellee that the possession or control, with the requisite intent, of 'any hypodermic syringe or needle' is per se a violation. The words 'adapted for use of narcotic drugs by injection in a human being' modify 'any instrument' but do not modify 'hypodermic syringe or needle.' It is unnecessary to show that a hypodermic syringe or needle has been adapted for the use of narcotic drugs by injection."

*See also People v. Gordon,* 336 N.Y.S.2d 753 (1972); *People v. Berger,* 305 N.Y.S.2d 789 (1969), two *nisi prius* decisions; and *cf. Dyton v. State,* 250 A.2d 383 (Del. 1969). Also Annot.: *Prosecutions Based Upon Alleged Illegal Possession Of Instruments To Be Used In Violation Of Narcotics Laws,* 92 ALR3d 47 (1979). To reach any other result would be to strain both reason and rhetoric.[5]

---

5. Appellant's reliance on *Taylor v. State,* 267 N.E.2d 383 (Ind. 1971) is misplaced. In no way does that case stand for the proposition he asserts. Taylor's conviction was reversed because there was insufficient evidence of unlawful intent, not because the implements were not "adapted" for hypodermic use.

We therefore reject appellant's statutory construction argument and find, accordingly, that the evidence sufficed to sustain his conviction.

## (2) *Instruction*

For essentially the same reasons noted above, we find no error in the court's initial instruction to the jury or to its repetition of that instruction following an inquiry from the jury. It was a clear and correct statement of the law.

*Judgment affirmed; appellant to pay the costs.*