498 A.2d 1188

ERWIN AND SHAFER, INC.

v.

PABST BREWING COMPANY, INC.

**Misc. No. 9, Sept. Term, 1985.**

Court of Appeals of Maryland.

Oct. 22, 1985.

Lawrence E. Finegan, Frederick (Rosenstock, Burgee & Welty, P.A., Frederick, on brief), for appellant.

Robert M. Heller, New York City (Kramer, Levin, Nessen, Kamin & Frankel, New York City, on brief, Piper & Marbury, Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

COUCH, Judge.

The United States District Court for the District of Maryland has certified to us for determination the following questions.

1) Whether § 203E of the Maryland Beer Franchise Fair Dealing Act, Maryland Code (1974, 1981 Repl.Vol.), Article 2B, § 203A *et seq.*, requires a beer franchisor to grant to a distributor of specified brands of beer in a given territory, the right to distribute a brand of beer which the franchisor acquired after the execution of the original distributorship agreement.

2) Whether § 203B of the Maryland Beer Franchise Fair Dealing Act, Maryland Code (1974, 1981 Repl.Vol.), Article 2B, § 203A *et seq.*, grants a beer distributor the right to order and receive a brand of beer that is not covered by the distributor's franchise agreement.

The certification was pursuant to the Uniform Certification of Questions of Law Act, Maryland Code (1974, 1984 Repl.Vol.), Courts and Judicial Proceedings Article, § 12–601 *et seq.*[1] A supplemental order of certification specified that Erwin and Shafer, Inc. ("E and S"), plaintiffs in the proceeding pending in the United States District Court, should be treated as appellants in this Court. We respond in the negative to each of the certified questions herein presented.

---

**1.** That Act provides in part:

"*§ 12–601. Jurisdiction granted to Court of Appeals.*

The Court of Appeals may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a United States District Court, or the highest appellate court or the intermediate appellate court of any other state when requested by the certifying court if there is involved in any proceeding before the certifying court a question of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the Court of Appeals of this State."

I

The questions arose in the United States District Court pursuant to the following allegations, which are taken from the statement of facts contained in the Order of Certification dated April 12, 1985. The Maryland Beer Franchise Fair Dealing Act, Maryland Code (1974, 1981 Repl.Vol.), Art. 2B, § 203A *et seq.* (the "Act") was enacted in 1974. In § 203A(a) of the Act, the General Assembly expressly recognized the problem confronting beer distributors.[2] The Act protects beer distributors from unlawful inducements, threats and terminations by beer manufacturers.[3]

---

**2.** That section provides in part:
> *"Declaration of policy; definitions.*
>
> "(a) It is the declared policy of the State of Maryland that it is necessary to regulate and control the agreements, franchises and relationships between manufacturers of beer and their distributors for the purpose of fostering and promoting temperance in the consumption thereof, and to promote respect for and obedience to the laws controlling the distribution and sale of beer. It is necessary to accomplish the declared policy in order to eliminate the undue stimulation of sales of beer in this State by manufacturers inducing, coercing, or attempting to induce or coerce, distributors of beer to do acts detrimental to the orderly and lawful distribution thereof by threatened or actual termination of the manufacturer and distributor relationship, directly or indirectly, by the establishment of dual distributors of a brand or brands thereof in a territory presently served by a distributor, or by the sale of the same brand or brands in one territory by more than one franchisee...."
>
> Maryland Code (1974, 1981 Repl.Vol.).

**3.** Art. 2B, § 203B provides:
> "Unlawful inducements or threats by manufacturer; failure or refusal to fill distributor's order.
>
> "No beer manufacturer shall (1) induce or coerce, or attempt to induce or coerce, any beer distributor to accept delivery of any alcoholic beverage, any form of advertisement, or any other commodity, which shall not have been ordered by the beer distributor; (2) induce or coerce, or attempt to induce or coerce, any beer distributors to do any illegal act or thing, or do any other act unfair to the beer distributor, by threatening to cancel, terminate, or refuse to renew any beer franchise existing between a beer manufacturer, or representative thereof, and a beer distributor; (3) fail or refuse to deliver to a beer distributor having a franchise, or agreement, any beer publicly advertised by it or its agents for immediate sale promptly after such beer distributor's order shall have been received."

Since 1974, however, the nature of beer distribution, in this State and nationwide has changed dramatically. There are now far fewer manufacturers of beer products, and distributors typically handle several brands of beer.

Appellant, E and S, is a Maryland corporation engaged in the distribution of beer products. Appellee, Pabst Brewing Company, Inc. ("Pabst") is a Delaware corporation which produces beer products.

On June 16, 1982, E and S entered into a Distribution Agreement with Pabst whereby E and S was granted the exclusive right to sell in Howard County, Maryland, four "labels" or brands of Pabst's products.[4] The Agreement did not expressly accord E and S the distribution rights in Pabst beer products other than those stated in the agreement.

In March of 1983, Pabst merged with Olympia Brewing Company ("Olympia"). Consequently, Pabst acquired the brands labelled "Hamm's," "Hamm's Special Light," "Olympia," "Olympia Light," and "Maxx Lager." This boosted Pabst's beer brand inventory to at least eleven.[5] Subsequent to its merger with Olympia, Pabst solicited marketing proposals from several beer distributors for the distribution of Hamm's and Hamm's Special Light in a selected number of Maryland distribution territories. E and S was one of approximately ten distributors to submit a marketing plan. After reviewing the plans, Pabst chose

---

Maryland Code (1974, 1981 Repl.Vol.).

**4.** The pertinent language in the Distribution Agreement between Pabst and E and S stated:
 "NOW THEREFORE, it is mutually agreed:
 "1. Pabst hereby grants unto the distributor the right to sell PABST BEER, ANDEKER BEER, PABST EXTRA LIGHT BEER and RED WHITE & BLUE BEER within the area of primary marketing responsibility ... described as follows:
 In the State of Maryland: All of HOWARD COUNTY."

**5.** Pabst brewed Pabst Blue Ribbon, Pabst Lite, Pabst Extra Lite, Andeker, Olde English 800 Malt Liquor, and Red, White & Blue brands prior to its acquisition of Olympia. Brief for Appellee at 2.

A.E. Davies, Inc. ("Davies"), rather than E and S, to distribute the Hamm's beers.[6] The agreement between Pabst and Davies which became effective April 12, 1983, granted to Davies the exclusive right to distribute Hamm's and Hamm's Special Light beers in Howard County, Maryland.

On or about March 31, 1983, E and S instituted this action for injunctive relief in the Circuit Court for Frederick County, Maryland, claiming that Pabst violated sections 203B and 203E. The case was removed to the United States District Court for the District of Maryland under 28 U.S.C. § 1332 (1982) on or about April 26, 1983. Judge Hargrove of that court certified questions to this Court on joint motion of the parties and further proceedings were stayed pending our resolution thereof.

## II

### (1)

Whether § 203E of the Maryland Beer Franchise Fair Dealing Act, Maryland Code (1974, 1981 Repl.Vol.), Article 2B, § 203A *et seq.*, requires a beer franchisor to grant to a distributor of specified brands of beer in a given territory, the right to distribute a brand of beer which the franchisor acquired after the execution of the original distributorship agreement.

We are called upon to once again apply the familiar rules of statutory construction. This Court has repeatedly discussed and applied these well-founded principles.[7] The principles are particularly applicable to the instant appeal.

 In resolving the first certified question before us,

---

6. Pabst characterized the proposal submitted by E and S as "weak" and simply inadequate.

7. For a further review, *see Board of Examiners in Optometry v. Spitz,* 300 Md. 466, 474, 479 A.2d 363, 367 (1984); *Mayor of Baltimore v. Hackley,* 300 Md. 277, 283, 477 A.2d 1174, 1177 (1984).

we initially look to the language in the statute.[8] If it is clear and unambiguous, then we need look no further. *See Mayor of Baltimore v. Hackley*, 300 Md. 277, 283, 477 A.2d 1174, 1177 (1984).

Section 203E reads:

"Establishment of dual distributorships in same territory.

"No franchisor, who shall designate a sales territory for which any franchisee shall be primarily responsible or in which any franchisee is required to concentrate its efforts, shall enter into any franchise or agreement with any other beer distributor for the purpose of establishing an additional franchisee for its brand or brands of beer in the territory being primarily served or concentrated upon by a licensed franchisee."

Maryland Code (1974, 1981 Repl.Vol.).

E and S argues that the language set forth in § 203E requires a manufacturer of beer products to market all of its brands or "labels" through a single distributor in a given territory.[9] The reasonableness of this proposition is simple and clear to E and S: that, in enacting Article 2B, entitled "Alcoholic Beverages," of which §§ 203A *et seq.* are but one part, the legislature sought to put in place a comprehensive scheme designed to completely preempt freedom of contract in this area and regulate all relationships existing between manufacturers, wholesalers and distributors of alcohol. The result of this interpretation is equally reasonable and understandably attractive to E and S. A manufacturer would have to comply with the statute by providing *all* of

---

**8.** It is uncontroverted that a state's right to control and regulate liquor is founded in its police power, granted to it under the twenty first amendment to the U.S. Constitution. *See Dundalk Liquor Co. v. Tawes*, 201 Md. 58, 66, 92 A.2d 560, 563 (1952); *see also*, 59 *Op.Att'y Gen.* 677 (1974).

**9.** There is no dispute that E and S is a "franchisee" and "beer distributor," and that Pabst is a "franchisor" and "beer manufacturer" under the Act. Maryland Code (1974, 1981 Repl.Vol.), Art. 2B, § 203A(b)(2)–(4).

its brands of beer, whether the subject of a franchise agreement or not, to a single distributor in a given territory, or not sell beer in that territory. To buttress its argument, E and S seizes the words "or brands" from the phrase "... for the purpose of establishing an additional franchisee for its brand or brands ..." to illustrate the legislature's intention that *all* brands of beer newly manufactured or subsequently acquired by a franchisor be provided to a single distributor in a particular sales territory. We disagree. We find subsection (a) of § 203A particularly instructive in our determination.[10] A plain reading of that section makes clear the concern of the legislature that temperance in alcohol consumption be promoted. To effectuate this intent, the legislature sought to protect the local beer distributor from those practices of manufacturers motivated to induce or coerce the weaker distributors into stimulating sales of beer products.[11]

In light of § 203A(a), we must construe § 203E, not only so as to render it effective, *Pickett v. Prince George's County*, 291 Md. 648, 661, 436 A.2d 449, 456 (1981), but with reference to the purposes the legislature sought to accomplish. *See Cook v. State*, 62 Md.App. 634, 642, 490 A.2d 1311, 1314 (1985); *Howard County Ass'n for Retarded Citizens, Inc. v. Walls,* 288 Md. 526, 530, 418 A.2d 1210, 1213 (1980). We conclude that the proper and intended interpretation of § 203E, that beer manufacturers

---

**10.** *See supra* text accompanying note 2.

**11.** 1974 Md.Laws Ch. 877. Statutes similar to Maryland's exist in several states. *See, e.g.,* Ariz.Rev.Stat.Ann. §§ 44–1565 to 1567 (Supp. 1984); Ind.Code Ann. §§ 7–1–3–3–17, –1–5–5–9 (Burns 1984); Me.Rev. Stat.Ann. Tit. 28, §§ 665–679 (Supp.1985); Mo.Ann.Stat. §§ 407.-400–.420 (Vernon 1979); Neb.Rev.Stat. §§ 87.401–.410 (Supp.1981); Nev.Rev.Stat. §§ 598.290–.359 (Supp.1981); N.J.Stat.Ann. §§ 56:10–1 to :10–15 (West.Supp.1985); N.M.Stat.Ann. §§ 60–8A–1 to –8A–19 (1981); N.C.Gen.Stat. §§ 18B–111F, –1200 to –1217 (Supp.1983); Ohio Rev.Code Ann. Tit. 13, §§ 1333.82–.87 (Page 1979); Vt.Stat.Ann. Tit. 7, §§ 701–710 (Supp.1985); Va.Code §§ 4–118.4 to .20:1, –118.21 to .41 (wine franchise act) (Supp.1985); W.Va.Code §§ 60–8–28 to –8–31 (wine distribution) (1984).

are prohibited from selling any *particular* brand or brands of beer through *more than one* distributor in a *particular* territory, is consistent with those policy considerations enunciated in § 203A(a) and gleaned from the Act as a whole. Such an interpretation lends itself to the protection of local distributors and the promotion of temperance by limiting each distribution channel to a particular brand or brands of beer. Moreover, neither the distributor nor the manufacturer are in any way prejudiced by such a limitation. The distributor is assured that its franchise agreement will not be jeopardized or terminated by a manufacturer absent a showing of good cause under § 203C. Further, the manufacturer is assured that its distributor will focus its attention on promoting, marketing and selling the brand or brands of beer assigned exclusively to the distributor.

E and S presses that § 203E accomplishes more, suggesting a manufacturer must confine *all* of its *brands* to a single distributor in a given territory. We think this argument proves too much and presents a host of problems. A court must shun a construction of a statute which will lead to absurd consequences. *Coerper v. Comptroller*, 265 Md. 3, 6, 288 A.2d 187, 188 (1972); *Doswell v. State*, 53 Md.App. 647, 653, 455 A.2d 995, 999 (1983). We illustrate.

First, to adopt such an interpretation would be to bestow upon all distributors a right akin to a first refusal in all those brands of beer made or acquired by their manufacturers, without regard to existing franchise agreements [12] or whether the new labels had been acquired by the manufacturer subsequent to execution of the franchise agreement. We are unable to construe any language of § 203E as granting such broad powers.

Second, were E and S to prevail, Pabst would be forced either to terminate existing Olympia distributors in those

---

**12.** E and S, in arguing that the legislature sought to "preempt freedom of contract in this area," appellant's brief at 12, seems to suggest that whether a particular brand of beer is the subject of a franchise agreement is of no consequence. We refuse to accept this argument.

Maryland counties having a Pabst distributor, such as E and S, or maintain a distribution arrangement utilizing both Pabst distributors and Olympia distributors to carry Hamm's beers in direct contravention of § 203E. We do not believe the legislature intended to create such a situation. *Coerper*, 265 Md. at 3, 288 A.2d at 188.

E and S contends such a situation is easily remedied by resort to the Act's elaborate termination provisions, set forth in sections 203C and D.[13] We disagree and find this contention without merit.

Our prior discussion makes clear that the legislature, in drafting the Act, did not intend to create a situation whereby a beer manufacturer would be forced to choose between violating § 203E in maintaining two or more distributors in a given territory for the promotion of a particular brand or

---

**13.** Section 203C reads:

> *"Termination or refusal to renew franchise without good cause.*
> "Notwithstanding the terms, provisions or conditions of any agreement or franchise, no franchisor shall cancel, terminate or refuse to continue or renew any beer franchise, or cause a franchisee to resign from a franchise, unless good cause exists for termination, cancellation, nonrenewal, noncontinuation or causing a resignation; provided, that good cause shall exist if a franchisee's license to do business in the State is revoked under any provisions of this article."

Maryland Code (1974, 1981 Repl.Vol.).

Section 203D reads:

> *"Notice of intended termination or nonrenewal of franchise; correction of deficiency by franchisee.*
> "Except as provided in this section, a beer manufacturer shall provide a franchisee at least 180 days prior written notice of any intent to terminate, cancel or nonrenew any franchise agreement. The notice shall state all the reasons for the intended termination, cancellation, or nonrenewal. The franchisee shall have 180 days in which to rectify any claimed deficiency. If the deficiency shall be rectified within 180 days of notice, then the proposed termination, cancellation or nonrenewal shall be null and void and without legal effect. The notice provisions of this section shall not apply if the reason for termination, cancellation or nonrenewal is insolvency, the occurrence of an assignment for the benefit of creditors, or bankruptcy."

Maryland Code (1974, 1981 Repl.Vol.).

brands of beer, and terminating one or more of its franchise agreements so as to avoid a § 203E violation.

If a manufacturer opts for the latter choice, a distributor may well find its franchise agreement terminated for reasons wholly unrelated to its performance under the agreement. It is questionable whether the reasons for termination in such a case would constitute "good cause" as that phrase is contemplated in § 203C.[14] Moreover, a manufacturer may be forced to arbitrarily choose which distributor or distributors to terminate if such factors as performance and ability are indistinguishable or equally satisfactory.

Clearly, to interpret these provisions as placing a manufacturer in such a position would also be to place the rights of distributors under the Act in jeopardy. We decline to do so. To do otherwise would be to render the Act inconsistent and ineffective. *Pickett v. Prince George's County,* 291 Md. 648, 661, 436 A.2d 449, 456 (1981); *see Mayor of Baltimore v. Hackley,* 300 Md. 277, 283, 477 A.2d 1174, 1177 (1984).

We now consider E and S's attempt to construe the term "dual distributorships," as that term appears in the caption to Article 2B, § 203E, as illustrative of the legislature's intention to prevent a manufacturer of beer products from working with more than one distributor in a particular territory, regardless of the number of brands a manufacturer has. We summarily dismiss this argument as wholly misplaced. E and S ignores the settled rule that a caption is not part of the law, unless expressly provided or part of the law as enacted. *Smelser v. Criterion Ins. Co.,* 293 Md. 384, 444 A.2d 1024 (1982); *Ohio Cas. Ins. v. Insurance Comm'r,* 39 Md.App. 547, 553, 387 A.2d 622, 625 (1978). The caption quoted by E and S is not part of § 203E as enacted. 1974 Md.Laws Ch. 877. It constitutes a mere "catchword" indicative of the content of that section. *See*

---

**14.** The phrase "good cause" has been defined as "substantial reason, one that affords a legal excuse." *Black's Law Dictionary* 623 (5th ed. 1979); *see Wilson v. Morris,* 369 S.W.2d 402, 407 (Mo.1963).

Md.Code, Art. 1, § 18; *Montgomery County v. Eli*, 20 Md.App. 269, 275–76, 315 A.2d 136, 140 (1974).

### (2)

Whether § 203B of the Maryland Beer Franchise Fair Dealing Act, Maryland Code (1974, 1981 Repl.Vol.), Article 2B, § 203A *et seq.*, grants a beer distributor the right to order and receive a brand of beer that is not covered by the distributor's franchise agreement.

We now turn our attention to the second and last question certified to us for determination.

E and S first argues that, even assuming *arguendo*, that Pabst were correct in its interpretation of § 203E, Pabst still must contend with its violation of § 203B.[15] It is uncontroverted that the marketing plan submitted by E and S for the distribution of the Hamm's label contained an order.[16] It is further uncontroverted that Pabst did not deliver any beer in response to that order. E and S concludes that Pabst's subsequent franchise agreement with Davies granting Davies the right to distribute the Hamm's beers was not only in direct contravention of its distribution agreement with E and S, but also violated § 203B since Pabst did not fulfill E and S's order.

We think this argument must fail. Inherent in E and S's argument is the assumption that, by virtue of its existing

---

**15.** *See supra* text accompanying note 3.

**16.** The order reads: "9. Initial and Back Up Orders

| | Initial | Back-up |
|---|---|---|
| Hamms 6 pk. cans | 2 pallets | 1 pallet |
| Hamms 12 pk. cans | 3 pallets | 2 pallets |
| Hamms light 6 pk. cans | 1 pallet | 0 |
| Hamms light 12 pk. cans | 1 pallet | 1 pallet " |

distributorship agreement with Pabst, E and S has a right under the Act to receive from Pabst delivery of all brands of beer ordered by it. The Hamm's beer would, of course, fall prey to this assumption. As we have discussed, however, the Act bestows no such authority upon a distributor such as E and S, simply by virtue of a distributorship agreement. Absent this, E and S's argument cannot stand.

Pabst offers yet another interpretation of § 203B. It contends § 203B was enacted as part of a general scheme to prevent unfair conduct by beer manufacturers. Pabst concedes that when a beer distributor places an order with a manufacturer, that manufacturer may fulfill the order. However, Pabst argues that a distributor is only entitled to delivery by a beer manufacturer if that distributor is authorized to distribute those brands of beer ordered, by way of a franchise or agreement. We agree.

Section 203B specifically provides "No beer manufacturer shall ... (3) fail or refuse to deliver to a beer distributor *having a franchise, or agreement*, any beer publicly advertised by it or its agents for immediate sale promptly after *such* beer distributor's order shall have been received." Md.Code, Art. 2B, § 203B. (emphasis supplied). We must construe a statute as a whole; a court may not insert or omit words to make a statute express an intention not evidenced in its original form. *Hackley*, 300 Md. at 283, 477 A.2d at 1177.

It is clear that, when read in conjunction with §§ 203A and E, as well as the remaining provisions of the Act, § 203B only contemplates entitling delivery of brands of beer publicly advertised by beer manufacturers to those beer distributors having distribution rights to those brands under a franchise or agreement. Such an interpretation is reasonable and consistent with the underlying policy declarations surrounding the entire Act.

QUESTIONS OF LAW ANSWERED AS HEREIN SET FORTH; COSTS TO BE EQUALLY DIVIDED.